FILED
COURT OF APPEALS
DIVISION II

2013 OCT -8 AM 9: 20

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 42224-7-II |
| Respondent, | |
| v. | PUBLISHED OPINION |
| BRANDON McWILLIAMS, | |
| Appellant. | |

BJORGEN, J. — Brandon McWilliams appeals his second degree assault convictions and sentence. He argues that (1) the trial court erred by improperly admitting testimony as prior consistent statements under ER 801 and (2) the sentencing court erred by ordering forfeiture of property and imposing improper community custody conditions. In his statement of additional grounds for review, McWilliams also argues that (3) insufficient evidence supports his convictions, (4) his counsel was ineffective because he failed to move for dismissal of the second degree assault charge, and (5) the trial court erred in admitting the 911 tape because it violated his confrontation rights. Finding no error, we affirm the trial court.

FACTS

On the evening of July 25, 2010, McWilliams was at a social gathering with his girlfriend, Amber Pacheco-Noel, her mother, Kimberly Pacheco, and his friend, Alighwa Henderson. The party was at Pacheco's apartment. Around midnight, Pacheco-Noel walked about two blocks to a nearby convenience store, where McWilliams and Henderson shortly joined her.

Outside of the store, Marqise Labee and Lamar Reynald were selling recordings of their music. Pacheco-Noel went inside the convenience store, and Henderson began to follow her. Apparently mistaking the two men for gang members, McWilliams began arguing with Labee and Reynald outside the store. Henderson then came back outside and joined McWilliams's argument. Labee and Reynald used a racial[1] epithet toward Henderson and Henderson threw the first punch. McWilliams then punched Labee in the face, causing him to lose consciousness. Pacheco-Noel ran outside to try to pull McWilliams and Henderson from the fight.

McWilliams produced a pistol and fired it in Reynald's direction, lacerating Reynald's neck, shattering the store window, and hitting a store clerk's leg. Another store clerk called 911, identifying the shooter as a white male.

Responding to the 911 call, police apprehended Henderson and Pacheco-Noel as each attempted to run toward Pacheco's apartment. When police initially apprehended Henderson, he told Deputy Huber that he did not know what was happening; he merely heard gunshots and ran.

---

[1] McWilliams is a Caucasian male; Henderson, Reynald and Labee are African American males.

But later that same night, Henderson told Deputy Huber about his involvement in the fistfight and that McWilliams produced a gun and fired it.

The State charged McWilliams with two counts of first degree assault,[2] each charged with a firearm enhancement[3] and a gang motivation[4] aggravator; one count of second degree assault,[5] also with a gang motivation aggravator; and one count of first degree unlawful possession of a firearm.[6] The State also charged Henderson[7] with the same crimes.

In an interview with Detective Nist, Henderson stated only that he had heard shots; he did not say that McWilliams was the shooter. Henderson did tell Nist, however, that he and McWilliams had been in the fistfight at the store. About five or six months later, Henderson entered into an agreement to plead guilty, for which the State would recommend a nine-month sentence, plus fines and restitution.

At trial, Henderson testified and identified McWilliams as the shooter. McWilliams cross-examined Henderson, asking several questions about his plea agreement. Henderson admitted that his plea spared him from a possible 25 to 30-year sentence and a "second strike" under Washington's three strikes law in exchange for his testimony against McWilliams. 4 Verbatim Report of Proceedings (VRP) at 558-59. In addition, Henderson admitted on cross-

---

[2] RCW 9A.36.011(1).

[3] RCW 9.94A.533(3).

[4] RCW 9.94A.535(3)(s).

[5] RCW 9A.36.021(1)(a).

[6] RCW 9.41.040(1)(a).

[7] Henderson is not a party to this appeal. His actual plea agreement is not in the record but he testified to its substance.

examination that he lied to officers by telling them that he was not involved in anything and confirmed both that Labee or Reynald called him "the 'N' word" and that they had directed this derogatory term only toward Henderson because McWilliams was white. 4 VRP at 562-64. McWilliams then asked if Henderson had pulled the gun and pointed it at Labee and Reynald because he was so angry; Henderson denied this. McWilliams asked, "You didn't shoot at anybody? . . . You didn't run into the parking lot. . . [and] try to hide the gun?" 4 VRP at 564. Henderson said he had not done these things.

After Henderson's testimony, the State asked Detective Nist whether Henderson had told her about McWilliams's involvement. McWilliams objected, saying that the testimony was hearsay; the State argued that Nist's testimony was admissible under ER 801(d)(1) either as a prior consistent statement or for purpose of identification. The trial court admitted Detective Nist's testimony as a prior consistent statement under ER 801(d)(1)(ii). Detective Nist testified that Henderson had not told her that McWilliams was the shooter but that his testimony was consistent with what he had told her regarding McWilliams's involvement in the fight outside the store.

The jury found McWilliams not guilty of first degree assault, but guilty of three counts of second degree assault, with two firearm enhancements. The jury also found McWilliams guilty of first degree unlawful possession of a firearm. The jury did not find that McWilliams committed the assaults with the gang motivation aggravating circumstance.

The sentencing court imposed a 156-month sentence, and ordered McWilliams to cooperate with the Department of Corrections (DOC) and maintain law-abiding behavior. The court further ordered the forfeiture of unclaimed property seized in his case and community

4

custody with crime-related prohibitions "per DOC/CCO [community corrections officer] per appendix F." Clerk's Papers (CP) at 335. Appendix F stated that based on McWilliams's second degree assault sentence, the court ordered special conditions "per DOC; CCO." CP at 340. McWilliams did not move the trial court to return the seized property.

## ANALYSIS

McWilliams argues that the trial court improperly admitted Henderson's statement under ER 801 and that the sentencing court improperly ordered property forfeiture and community custody. We disagree.

## I. ER 801

McWilliams argues[8] that the trial court improperly admitted Henderson's statement to Detective Nist under ER 801 because Henderson made the statement after he had ample time and reason to fabricate a story blaming McWilliams. Specifically, McWilliams argues that Henderson made the statement after police arrested Henderson for his involvement and after Henderson had replied to police inquiry with an admitted fabrication. The State responds that when McWilliams cross-examined Henderson, he strongly implied that Henderson fabricated his story to receive the benefits of a plea agreement; therefore, the trial court properly admitted the testimony. The State is correct.

---

[8] McWilliams also argues that the State erroneously argued an alternative theory to the trial court of "identification of a person made after perceiving the person" under ER 801(d)(1)(iii). In responding, the State argues that the testimony was proper under that portion of the rule. The trial court, though, did not admit the testimony under the "identification" portion of ER 801(d)(1)(iii); therefore, we need not consider that argument.

A.  Standard of Review

We review the trial court's decisions to admit evidence under the abuse of discretion standard. *State v. Thomas*, 150 Wn.2d 821, 856, 83 P.3d 970 (2004), *abrogated on other grounds by Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). Thus, we will reverse the trial court's decision only if no reasonable person would have decided the matter as the trial court did. *Thomas*, 150 Wn.2d at 988.

B.  Prior Consistent Statement

ER 801(d)(1) provides that a statement is not hearsay if:

> The declarant testifies at the trial or hearing and is subject to cross[-]examination concerning the statement, and the statement is . . . (ii) consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive. . . .

Cross-examination that merely attempts to point to inconsistencies in the witness's testimony does not raise an inference of recent fabrication and does not justify admission of prior consistent statements. *State v. Bargas*, 52 Wn. App. 700, 702-03, 763 P.2d 470 (1988). However, if cross-examination raises an inference "that the witness changed [his] story in response to an external pressure, then whether that witness gave the same account of the story prior to the onset of the external pressure becomes highly probative of the veracity of the witness's story given while testifying." *Thomas*, 150 Wn.2d at 865. Cross-examination designed to show that the witness has the motive to change his story to receive a plea agreement triggers ER 801(d)(1)(ii). *Thomas*, 150 Wn.2d at 866.

Here, McWilliams plainly implied that Henderson fabricated his story by asking Henderson whether his plea agreement allowed him to reduce a potential 25 to 30-year sentence

6

to less than a year in exchange for testimony against McWilliams. Rebutting an implied charge of recent fabrication is one of the purposes for which prior consistent statements may be admitted under ER 801(d)(1)(ii). McWilliams argues that when Henderson made the statements to Detective Nist, he already had ample time and reason to fabricate a story blaming McWilliams. Specifically, McWilliams argues that Henderson made the statements after police arrested Henderson for his involvement and after Henderson had replied to police inquiry with an admitted fabrication. However, "[t]he mere assertion that motives to lie may have existed at the time of the prior statement is insufficient to prevent their admission." *State v. Makela*, 66 Wn. App. 164, 173, 831 P.2d 1109 (1992). "The trial court must decide, as a threshold matter, whether the proffered motive to lie rises to the level necessary to exclude the prior consistent statement." *Makela*, 66 Wn. App. at 173. To do so, the trial court considers whether the witness made the prior consistent statements when "the witness was unlikely to have foreseen the legal consequences of his or her statements." *Makela*, 66 Wn. App. at 169.

Here, the trial court considered that Henderson entered into a plea agreement six months after he made the challenged statements to Detective Nist. Although Henderson was under arrest at the time he made the statements, he had not been arraigned or met with his attorney; therefore Henderson was not weighing a plea agreement at that time. Additionally, although Henderson had initially told police that he had no idea what was happening he shortly thereafter told Detective Nist that McWilliams was the shooter. Therefore, the trial court reasonably concluded that although Henderson had a motive to lie from the time of his first interaction with police, that generalized motive did not rise to a level requiring exclusion of his prior statement to Detective

7

Nist. We conclude that because the trial court did not make a decision that no reasonable person would have made, it did not abuse its discretion. *Thomas*, 150 Wn.2d at 856.

## II. SENTENCING

McWilliams next argues that the sentencing court improperly ordered property forfeiture and community custody. Specifically, McWilliams argues that (1) the forfeiture condition exceeded statutory authority because it denied him due process and (2) the condition written as "Conditions per DOC; CCO" was an impermissible delegation of the court's statutory sentencing authority. CP at 335. The State responds that (1) McWilliams has not and does not assert any possessory interest to the property in his case, (2) McWilliams's pre-enforcement challenge to his community custody is not ripe for review, and (3) the sentencing court did not impermissibly delegate authority to the DOC. Although the State's ripeness argument is erroneous, we otherwise agree with it.

A.     Standard of Review

An appellant may challenge an illegal or erroneous sentence for the first time on appeal. *State v. Ford*, 137 Wn.2d 472, 477, 973 P.2d 452 (1999). Although we review the imposition of crime-related prohibitions for abuse of discretion, we review whether the sentencing court had the statutory authority to impose a sentencing condition de novo. *State v. Armendariz*, 160 Wn.2d 106, 110, 156 P.3d 201 (2007).

B.     Property Forfeiture

"'[A] court may refuse to return seized property no longer needed for evidence only if (1) the defendant is not the rightful owner; (2) the property is contraband; or (3) the property is subject to forfeiture pursuant to statute.'" *City of Walla Walla v. $401,333.44*, 164 Wn. App.

8

236, 244, 262 P.3d 1239 (2011) (quoting *City of Walla Walla v. $401,333.44*, 150 Wn. App. 360, 367, 208 P.3d 574 (2009)). CrR 2.3(e)[9] governs motions for the return of illegally seized property; it provides that a person aggrieved by an unlawful search and seizure may move the court for the property's return on the ground that the person is lawfully entitled to its possession. A defendant may make a motion for return of property "at any time, including after a determination of guilt." *State v. Card*, 48 Wn. App. 781, 786, 741 P.2d 65 (1987). Our Supreme Court has interpreted the rule to require an evidentiary hearing to determine the right to possession between the State and the defendant. *State v. Marks*, 114 Wn.2d 724, 734-35, 790 P.2d 138 (1990).

Because "[t]he seizure of property from someone is prima facie evidence of that person's" property entitlement, the State (or government agency) has the initial burden to show a possessory right. *Walla Walla*, 164 Wn. App. at 247. "Thereafter, the defendant must come forward with sufficient facts to convince the court of his right to possession." *Marks*, 114 Wn.2d at 735. If the defendant does not make such a showing, the court must deny the defendant's motion for return of property. *Marks*, 114 Wn.2d at 735. Although the State has the initial burden, the rule contemplates that the defendant moves for the property's return and that an evidentiary hearing ensues. *Marks*, 114 Wn.2d at 735-36.

---

[9] CrR 2.3(e) provides:
> A person aggrieved by an unlawful search and seizure may move the court for the return of the property on the ground that the property was illegally seized and that the person is lawfully entitled to possession thereof. If the motion is granted the property shall be returned. If a motion for return of property is made or comes on for hearing after an indictment or information is filed in the court in which the motion is pending, it shall be treated as a motion to suppress.

No. 42224-7-II

McWilliams challenges the lack of process afforded to him regarding property forfeiture. His judgment and sentence included this printed text:

Property may have been taken into custody in conjunction with this case. Property may be returned to the rightful owner. Any claim for return of such property must be made within 90 days. After 90 days, if you do not make a claim, property may be disposed of according to law.

CP at 333. This handwritten text followed the printed text:

Conditions per DOC; CCO
Law-abiding behavior
Forfeit all property seized

CP at 333. On appeal, McWilliams correctly notes that the handwritten text requires property forfeiture without process. But McWilliams failed to move for the return of any seized property under CrR 2.3(e) either during or after his trial.[10] Further, he failed to object to this language at sentencing. On appeal, he fails to identify any property with any specificity.[11]

McWilliams limits his argument to whether the trial court had authority to impose the forfeiture condition as a matter of law. The trial court has authority to order the forfeiture of lawfully seized property when the defendant is not the rightful owner. *Walla Walla*, 164 Wn.

---

[10] Although CrR 2.3(e) provides that a defendant may move for the return of seized property, it does not compel raising such a claim. The right against self-incrimination protects a defendant from asserting a property interest, which would implicate him in a crime. *City of Seattle v. Stalsbroten*, 138 Wn.2d 227, 232, 978 P.2d 1059 (1999).

[11] The record is not clear regarding the property seized by the State or what claim McWilliams may have to it. The State asserts:

[N]early all of the seized property was clearly contraband . . . or subject to competing claims. The seized ammunition could not be lawfully returned to defendant due to his felony history. Police discovered the remaining property at the 7- Eleven store or in the vicinity of Kimberly Pacheco's apartment. A pair of white shorts consistent with the shorts worn by the shooter were recovered from defendant's person, yet he elected to remain silent about their ownership.

Br. of Resp't at 34 (internal citations omitted).

10

App. at 244. Unlike the cases McWilliams relies on, he has not, and does not assert any possessory interest in the property at issue. *See State v. Alaway*, 64 Wn. App. 796, 797-99, 828 P.2d 591 (1992); *Espinoza v. City of Everett*, 87 Wn. App. 857, 862, 943 P.2d 387 (1997). Thus the trial court did not abuse its discretion when it ordered the forfeiture of property that defendant never claimed when he had notice and an opportunity to do so.

C.     Community Custody Conditions

McWilliams also argues that his community custody condition written as "Conditions per DOC; CCO" was an impermissible delegation of the court's statutory sentencing authority. Br. of Appellant at 35. We disagree.

The State argues that McWilliams's challenge to his custody conditions is not yet ripe for review. Pre-enforcement challenges to community custody conditions are ripe for review when the issue raised is primarily legal, further factual development is not required, and the challenged action is final. *State v. Sanchez Valencia*, 169 Wn.2d 782, 786, 239 P.3d 1059 (2010). Courts routinely entertain pre-enforcement challenges to sentencing conditions. *See, e.g., Sanchez Valencia*, 169 Wn.2d at 786. Specifically the State argues, "The trial court is empowered to order eligible offenders to comply with the administrative regulations promulgated by the department pursuant to its legislatively delegated authority." Br. of Resp't at 27. The State's argument conflates the issue of whether the law ultimately supports McWilliams's argument with the issue of whether it is indeed a legal argument based on a final action, requiring no further factual development.

McWilliams raises a primarily legal issue, whether the sentencing court improperly delegated authority to the DOC. Nothing about this statutory question will change between now

11

and the time McWilliams is released from prison, supporting its characterization as a legal question. *Sanchez Valencia*, 169 Wn.2d at 788. Further, unlike conditions imposing financial obligations or allowing for the search of a person or residence, this statutory question does not depend on the particular circumstances of the attempted enforcement. *Sanchez Valencia*, 169 Wn.2d at 789 (quoting *United States v. Loy*, 237 F.3d 251, 258 (3d Cir. 2001)). Under *Sanchez Valencia* the issue is ripe, and we consider it on the merits.

"Washington sentencing courts are required to impose certain community custody conditions in specified circumstances" and are authorized to impose others. *State v. Bahl*, 164 Wn.2d 739, 744, 193 P.3d 678 (2008). RCW 9.94A.703 sets out the community custody conditions that are mandatory, waivable, or discretionary.

> 'While it is the function of the judiciary to determine guilt and impose sentences, the execution of the sentence and the application of the various provisions for the mitigation of punishment and the reformation of the offender are administrative in character and are properly exercised by an administrative body, according to the manner prescribed by the Legislature.'

*State v. Sansone*, 127 Wn. App. 630, 642, 111 P.3d 1251 (2005) (quoting *State v. Mulcare*, 189 Wash. 625, 628, 66 P.2d 360 (1937)).

Here, the sentencing court properly delegated the specifics of McWilliams's community custody conditions to the DOC. Unlike the cases McWilliams relies on, he does not challenge a specific court-created condition. *See Sanchez Valencia*, 169 Wn.2d at 794-95 (the court prohibited Valencia's possession of paraphernalia); *State v. Zimmer*, 146 Wn. App. 405, 413, 190 P.3d 121 (2008) (the court prohibited Zimmer's possession of a cell phone). Instead, McWilliams challenges whether the sentencing court may ask the DOC to establish additional conditions based on the community's risk. RCW 9.94A.704(2)(a) authorizes the DOC to

12

"establish and modify additional conditions.of community custody based upon the risk to community safety." Further, the court's delegation of the specifics of community custody conditions to DOC was within DOC's authority set by *Sansone*. Therefore, the sentencing court did not impermissibly delegate sentencing authority to the DOC.

## III. STATEMENT OF ADDITIONAL GROUNDS

### A. Sufficient Evidence

McWilliams argues that the evidence is insufficient to support his convictions because Reynald testified that he did not recognize anybody in court and also testified that he had not seen McWilliams before. McWilliams argues that, therefore, the State's only evidence was Henderson's testimony, which is insufficient because it is not direct.

When reviewing a challenge to the sufficiency of the evidence, we consider the evidence in the light most favorable to the State and determine whether any rational trier of fact could have found the crime's essential elements beyond a reasonable doubt. *State v. Williams*, 137 Wn. App. 736, 743, 154 P.3d 322 (2007) (quoting *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980)). We draw all reasonable inferences from the evidence in the State's favor and interpret the evidence "'most strongly against the defendant.'" *State v. Joy*, 121 Wn.2d 333, 339, 851 P.2d 654 (1993) (quoting *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992)). We consider both circumstantial and direct evidence as equally reliable, and we defer to the trier of fact on issues of conflicting testimony, witness credibility, and the persuasiveness of the evidence. *Thomas*, 150 Wn.2d at 874-75.

Here, the jury considered Henderson's testimony, surveillance video camera footage, and the tape of the 911 call identifying the shooter as a white male. Viewing all evidence in the light

13

most favorable to the State, and considering circumstantial evidence as equally reliable as direct evidence, a rational trier of fact could have determined that McWilliams committed second degree assault with firearm enhancements and that he unlawfully possessed a weapon. Thus, the evidence against McWilliams is sufficient.

B.    Effective Assistance of Counsel

McWilliams similarly argues that his attorney provided ineffective assistance of counsel because he failed to move for dismissal of the second degree assault charge despite the insufficient evidence supporting that crime.

To prevail on an ineffective assistance of counsel claim, McWilliams must show both deficient performance and resulting prejudice. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). If McWilliams fails to satisfy either part of the test, we need not inquire further. *State v. Hendrickson*, 129 Wn.2d 61, 78, 917 P.2d 563 (1996), *abrogated on other grounds by Carey v. Musladin*, 549 U.S. 70, 127 S. Ct. 649, 166 L. Ed. 2d 482 (2006). McWilliams is prejudiced if it is reasonably probable that, if not for his counsel's deficient performance, the outcome would have differed. *In re Pers. Restraint of Pirtle*, 136 Wn.2d 467, 487, 965 P.2d 593 (1998).

As discussed above, sufficient evidence supports McWilliams's convictions. Further, because an attorney's performance is not deficient for declining to raise frivolous or groundless matters, McWilliams's counsel was not deficient. *State v. Stevens*, 69 Wn.2d 906, 908, 421 P.2d 360 (1966).

C.    911 Call

McWilliams finally argues that the trial court erred in admitting the 911 tape because he did not have an opportunity to confront the witness against him.

The confrontation clause provides that: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. The confrontation clause bars the admission of "testimonial" hearsay unless the declarant is unavailable to testify and the defendant had a prior opportunity for cross-examination. *Crawford*, 541 U.S. at 53-54. Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. *State v. Koslowski*, 166 Wn.2d 409, 418, 209 P.3d 479 (2009). To determine whether statements are nontestimonial, the court considers: (1) whether the speaker was speaking about events requiring police assistance as they occurred; (2) weather a reasonable listener would conclude that the speaker was facing an ongoing emergency; (3) the nature of the information elicited by police; and (4) the formality of the interrogation. *Koslowski*, 166 Wn.2d at 418-19. At McWilliams's trial, the State sought to admit the 911 recording, despite the fact that the store clerk had not appeared to testify. The State argued that the store clerk made the 911 phone call while the events were transpiring and while facing an ongoing emergency. The trial court agreed with the State and admitted the 911 call into evidence.

The store clerk made the 911 call to inform police of a fistfight. While on the phone, the store clerk told police that a white person fired a shot, which shattered the store's window and hit another store clerk in the leg. Thus, the 911 recording captured events as they occurred and

15

No. 42224-7-II

where the speaker faced an ongoing emergency. The nature of the questions and the lack of formality all show that the clerk's statements were made in the course of an ongoing emergency and were not testimonial in `21 nature. *Koslowski*, 166 Wn.2d at 418-19. We conclude that the trial court did not violate McWilliams's right to confrontation by admitting this evidence.

We affirm the trial court.

BJORGEN, J.

I concur:

WORSWICK, C.J.

16

PENOYAR, J. (CONCURRENCE) — I concur in the result but write separately to question the logic and continuing validity of one of the preconditions to the availability of the prior consistent statement exception to the hearsay rule. According to the case law, one of the requirements for an admissible prior consistent statement is that the declarant was unlikely to have foreseen the legal consequences of his statement. This "legal consequences" requirement first appeared in *State v. Murley*, 35 Wn.2d 233, 212 P.2d 801 (1949), and subsequent cases have continued to cite it despite its inapt narrowing of the prior consistent statement exception.

The hearsay rule is founded on the theory "that the many possible sources of inaccuracy and untrustworthiness which may lie underneath the bare untested assertion of a witness can best be brought to light and exposed, if they exist, by the test of cross-examination." 5 J. WIGMORE, *Evidence* § 1420, at 251 (J. Chadbourn rev. 1974). The hearsay rule will also usually exclude prior statements by witnesses who testify at trial. 5 J. WIGMORE, *Evidence* § 1363, at 10. An exception to this exists when a witness is impeached in cross-examination for bias, interest, or corruption. 4 J. WIGMORE, *Evidence* § 1128, at 268 (J. Chadbourn rev. 1972). "A consistent statement, at a *time prior* to the existence of a fact said to indicate bias, interest, or corruption, will effectively explain away the force of the impeaching evidence." 4 J. WIGMORE, *Evidence* § 1128, at 268 (emphasis in original). This prior consistent statement exception to the hearsay rule allows a witness to have his credibility affirmed after it has been attacked:

> A statement is not hearsay if—
> (1) *Prior Statement by Witness.* The declarant testifies at the trial or hearing and is subject to cross examination concerning the statement, and the statement is . . . (ii) consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive.

ER 801(d)(1)(ii). *Murley* added a third requirement to the exception, that "the prior out-of-court statements were made under circumstances minimizing the risk that the witness foresaw the legal consequences of his statements." 35 Wn.2d at 238.

In *Murley*, a nine-year-old sexual assault victim made statements to police, which the defense tried to exclude. 35 Wn.2d at 234, 236. The court found these statements reliable and therefore admissible because the victim was too young to realize the legal consequences of making them. *Murley*, 35 Wn.2d at 238-39.

*Murley* claims to summarize the principles of the prior consistent statement exception. 35 Wn.2d at 238. But the cases preceding *Murley* do not mention foreseeing legal consequences. Instead, they rely on a broader rule paralleling the language of ER 801(d)(1)(ii): "'[prior consistent statements are admissible] where the testimony is assailed as a fabrication of a recent date, or a complaint recently made; for there, in order to repel such imputation, proof of the antecedent declaration of the party may be admitted.'" *State v. Manville*, 8 Wash. 523, 525, 36 P. 470 (1894) (quoting *Ellicott v. Pearl*, 35 U.S. 412, 413, 10 Pet. 412, 9 L. Ed. 475 (1836)) (holding that evidence of a prior consistent statement was admissible as an exception to hearsay).[12]

---

[12] *Murley* also cites a law review article surveying various states' rules on the admissibility of prior consistent statements. 35 Wn.2d at 237. There is no mention in this article of foreseeing legal consequences, but the author synthesizes a rule that a witness may repel accusations of recent fabrication by proving he made the same statement "at a time when its ultimate effect and operation arising from a change of circumstances could not be foreseen." Herald A. O'Neill, *Admissibility of Previous Consistent Statements By a Witness*, 6 Wash. Law Rev. 112, 113 (1931).

In the half-century from *Manville* to *Murley*, Washington courts recognized a 'foreseeable' element to the prior consistent statement test, but this was not limited to legal consequences. For example, our Supreme Court held that a prior statement was admissible to restore a witness's credibility if it was made "before the time when its ultimate effect and operation could be foreseen." *Sweazey v. Valley Transport, Inc.*, 6 Wn.2d 324, 335, 107 P.2d 567 (1940). In a negligence suit against a street car company, the court employed similar language approving the admissibility of a statement given "before its effect and operation could be foreseen." *Callihan v. Wash. Water Power Co.*, 27 Wash. 154, 162, 67 P. 697 (1902).

Despite the lack of precedent for the legal consequences requirement, *Murley* continues to be broadly cited. In another sexual assault case the Court of Appeals emphasized the rule created in *Murley*, stating that "a charge of recent fabrication can be rebutted by the use of prior consistent statements *only* if those statements were made under circumstances indicating that the witness was unlikely to have foreseen the legal consequences of his or her statements." *State v. Makela*, 66 Wn. App. 164, 168-69, 831 P.2d 1109 (1992) (emphasis added). There, the court admitted the underage victim's testimony of prior allegations because no motive to fabricate existed when the statements were made. *Makela*, 66 Wn. App. at 167-68.

*Murley's* language that prior out-of-court statements must be made "under circumstances minimizing the risk that the witness foresaw the legal consequences of his statements" was an acknowledgement of the youth and guilelessness of the victim-declarant. 35 Wn.2d at 238. This narrow holding should not be unnecessarily extended. There remain many motive-based reasons to exclude prior statements. Whether a witness foresaw the legal consequences of his statement is but one. Alternately, if he foresaw the legal consequences of his statement, this does not

always make his statement unreliable or inadmissible. The correct test to admit prior consistent statements is whether the statement was made before the motive to fabricate arose. It remains for the trial court to decide as a threshold matter whether the evidence of a motive rises to the level needed to exclude a prior consistent statement. *Makela*, 66 Wn. App. at 173.

Penoyar, J.