IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Personal Restraint of | ) ) ) | No. 79067-6-I |
| JAMES ELLIS CROCKETT, | ) ) ) | DIVISION ONE |
| Petitioner. | ) ) ) ) ) | UNPUBLISHED OPINION FILED: March 4, 2019 |

SMITH, J. — James Crockett petitions for relief from restraint, challenging his conviction for second degree rape. He argues that his trial counsel was ineffective for failing to object to the State's introduction of the victim's out-of-court statements. He also argues that his appellate counsel was ineffective for failing to challenge the exclusion of text messages from the victim's phone and the exclusion of Crockett's character witnesses. But Crockett has not established prejudice with regard to his trial counsel's performance or appellate counsel's failure to challenge the exclusion of the text messages. Furthermore, any argument regarding the exclusion of Crockett's character witnesses would not have had merit on appeal. Therefore, we deny Crockett's petition.

FACTS

In 2008, when M.W. was 12 years old, her adopted mother, Rhonda Crockett, married Crockett and Crockett moved into the family home.[1] According

_____

[1] Because Crockett and Rhonda share a common last name, we refer to Rhonda by her first name.

to M.W., shortly after Crockett moved in, he began to touch her inappropriately. M.W. testified that initially Crockett touched her breasts and vagina over her clothing, but the touching later progressed to digital penetration. On Thanksgiving 2008, M.W. disclosed the touching to Rhonda. Rhonda immediately confronted Crockett and held a family meeting with Crockett and M.W. to discuss M.W.'s disclosure. During that meeting, Crockett admitted to touching M.W., but not in the way that M.W. had described. According to Crockett, he accidentally touched M.W.'s breast area and her leg while he was teaching M.W. and her younger sister what to do if anyone touched them inappropriately. No one called the police following the Thanksgiving 2008 meeting, and M.W. testified that the touching stopped thereafter.

About five years later, in August 2013, M.W. and Rhonda, whose relationship was strained at the time, had an altercation during which Rhonda hit M.W., grabbed her by her hair, and threw her to the ground. Some days later, M.W. made a post to her Facebook page that she later described as follows:

> Just that I was tired of having to live in the same house and remember and see that my – like the man – because my mom's husband raped me, and something about my mom almost breaking my neck. And then at the end of it, I just posted "I'm a dead girl walking."

Officers were dispatched to the Crockett home on August 26, 2013, after an anonymous caller reported M.W.'s Facebook post to the police. The officers removed M.W. from the Crockett home, and Child Protective Services later placed her into protective custody. On August 29, 2013, Detective Cynthia Brooks and social worker Mara Campbell interviewed M.W. In December 2013,

the State charged Crockett with four counts of rape of a child in the second degree.

Crockett's defense theory was that M.W. lied about Crockett's abuse to get away from the Crockett household. To that end, Crockett made a pretrial request to introduce extrinsic evidence that M.W. "ha[d] a motivation to lie about the alleged sexual assault to effectuate her removal from a strict home environment." Crockett also asked to introduce screen shots of eight text messages sent from M.W.'s mobile phone. The trial court admitted two of the eight for impeachment purposes only.

Additionally, Crockett opposed the State's pretrial request to exclude character evidence and evidence of Crockett's reputation for truthfulness, including testimony from Charles and Regina Harris, who are members of Crockett's church. Ultimately, neither of the Harrises testified.

M.W. testified at trial. On cross-examination, Crockett's counsel questioned M.W. extensively about her feelings toward Rhonda, the altercation between M.W. and Rhonda that preceded M.W.'s August 2013 Facebook post, and the two text messages that the court admitted. In the State's view, this cross-examination suggested that M.W. had a motive to fabricate her allegations against Crockett. The State then elicited testimony from Brooks and Campbell about what M.W. told them during their August 29, 2013, interview, relying on the hearsay exception for prior consistent statements.

A jury convicted Crockett of all four counts of second degree rape. He appealed, arguing, among other things, that the trial court erred by admitting

3

testimony from Campbell and Brooks about M.W.'s prior consistent statements. Division Two of this court affirmed, concluding that because Crockett did not object, he failed to preserve his challenge to the admission of this testimony.[2]

Crockett, who is currently serving a sentence of 210 months to life, petitions for relief from restraint, arguing that both his trial counsel and his appellate counsel were ineffective.

## DISCUSSION

*Ineffective Assistance of Trial Counsel*

Crockett argues that his trial counsel was ineffective for failing to object to the State's introduction of M.W.'s prior consistent statements to Brooks and Campbell. We disagree.

To prevail on a claim of ineffective assistance of trial counsel, Crockett must prove both (1) that "counsel's performance fell below an objective standard of reasonableness in light of all the circumstances" and (2) resulting prejudice, i.e., "that in the absence of counsel's deficiencies, there is a reasonable probability that the result of the proceeding would have been different." In re Pers. Restraint of Lui, 188 Wn.2d 525, 538, 397 P.3d 90 (2017). "'Counsel's errors must be so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" Lui, 188 Wn.2d at 538-39 (internal quotation marks omitted) (quoting Harrington v. Richter, 562 U.S. 86, 104, 131 S. Ct. 70, 178 L. Ed. 2d 624 (2011)). "In other words, '[t]he likelihood of a different result must be substantial,

---

[2] See State v. Crockett, No. 47017-9-II, slip op. at 7-8 (Wash. Ct. App. May 17, 2016) (unpublished), http://www.courts.wa.gov/opinions/pdf/D2%2047017-9-II%20Unpublished%20Opinion.pdf.

4

not just conceivable.'" Lui, 188 Wn.2d at 539 (alteration in original) (quoting Harrington, 562 U.S. at 112). Additionally, "to establish deficient performance based upon defense counsel's failure to object, the defendant must show . . . that the proposed objection would likely have been sustained." State v. Townsend, 142 Wn.2d 838, 850, 15 P.3d 145 (2001). The court's scrutiny of counsel's performance is "highly deferential," and the court strongly presumes reasonableness. Lui, 188 Wn.2d at 539. To that end, Crockett "must establish an absence of any legitimate trial tactic that would explain counsel's performance." Lui, 188 Wn.2d at 539.

We conclude that although Crockett's trial counsel was deficient for failing to object to Brooks' and Campbell's testimony, Crockett has not established resulting prejudice. Therefore, Crockett's ineffective assistance claim fails.

*(1) Counsel's performance was deficient*

To qualify as a "prior consistent statement" under ER 801(d)(1)(ii), a statement must be made at a time when the declarant did not have a motive to fabricate. State v. Ellison, 36 Wn. App. 564, 569, 676 P.2d 531 (1984). Here, the State sought to introduce M.W.'s statements to Brooks and Campbell after Crockett's cross-examination of M.W. suggested that M.W. had a bias against Rhonda and a motive to fabricate her allegations against Crockett. But the statements that M.W. made to Brooks and Campbell were made after, not before, M.W. became angry at her mother and developed an alleged motive to fabricate. Accordingly, had Crockett's counsel objected to the presentation of M.W.'s statements to Brooks and Campbell on that basis, the objection would

5

likely have been sustained.

Furthermore, the record reveals no legitimate trial tactic that would explain counsel's failure to object. Counsel explains in his declaration that "I made a pretrial motion to exclude this evidence, thus an objection . . . was properly lodged and therefore I believe that I preserved any error in its introduction into evidence at the trial." But this was not a legitimate reason for failing to object. Although a party losing a motion in limine does lodge a standing objection if the trial court has made a final ruling on the motion, State v. Kelly, 102 Wn.2d 188, 193, 685 P.2d 564 (1984), it does not appear from the record that the court ruled on Crockett's motion. Additionally, the relevant part of Crockett's pretrial motion did not address the State's argument that M.W.'s statements to Brooks and Campbell were prior consistent statements under ER 801(d)(1)(ii). Finally, the trial court expressly reserved ruling on the "prior consistent statements" issue and later, before Campbell began testifying about the interview with M.W., even paused to give Crockett's counsel the opportunity for a hearing outside the presence of the jury. But counsel declined that opportunity, saying "Let's proceed." Because no legitimate trial tactic explains counsel's failure to object and because, as discussed, an objection would likely have been sustained, counsel's performance was deficient.

The State argues that M.W.'s out-of-court statements were admissible as prior consistent statements because Crockett's cross-examination of M.W. implied that M.W. had developed a recent motive to lie on the stand. The State points to the fact that Crockett's counsel called out some inconsistencies

6

between what M.W. told the police and what she later testified to in court. But "[c]ross-examination that merely attempts to point to inconsistencies in the witness's testimony does not raise an inference of recent fabrication and does not justify admission of prior consistent statements." State v. McWilliams, 177 Wn. App. 139, 148, 311 P.3d 584 (2013). To this end, the State's reliance on McWilliams and State v. Thomas, 150 Wn.2d 821, 83 P.3d 970 (2004), is misplaced: Those cases involved cross-examinations designed to show that a witness had recently changed his or her story to receive a plea agreement. McWilliams, 177 Wn. App. at 148; Thomas, 150 Wn.2d at 866. Here, nothing in Crockett's cross-examination of M.W. indicates that Crockett was implying that M.W. had recently changed her story. The State's argument is not persuasive.

(2) *Crockett has not established resulting prejudice*

Crockett argues that he was prejudiced by counsel's deficient performance. Because M.W.'s cross-examination diminished any prejudice resulting from the admission of M.W.'s out-of-court statements, we disagree.

State v. Ramirez-Estevez, 164 Wn. App. 284, 263 P.3d 1257 (2011), is instructive here. In Ramirez-Estevez, the defendant appealed his jury trial conviction of five counts of first degree child rape for sexually assaulting his girlfriend's daughter, E.O. Ramirez-Estevez, 164 Wn. App. at 285-86. The defendant argued, among other things, that the trial court erred by admitting testimony from two witnesses about E.O.'s statements to each of them that the defendant had raped her. Ramirez-Estevez, 164 Wn. App. at 289-90. On appeal, Division Two of this court concluded that the trial court erred by admitting

that testimony. Ramirez-Estevez, 164 Wn. App. at 292.

The court nevertheless concluded that the admission of the testimony was harmless in light of E.O.'s own credible testimony:

> The jury heard E.O.'s detailed testimony about Ramirez-Estevez's multiple rapes and observed her demeanor on the witness stand, including during cross-examination by Ramirez-Estevez's trial counsel. Being subject to such cross-examination itself diminished, if not extinguished, the type of prejudice that sometimes results from admission of hearsay where the declarant is not subject to cross-examination at trial. In this way, E.O.'s live testimony in front of the jury eclipsed her earlier consistent recounting of the events to [the witnesses] and more than sufficiently supported the jury's verdict. In addition, although not conclusive, [a nurse practitioner]'s testimony also supported E.O.'s in-court testimony that Ramirez-Estevez had raped her multiple times.
> Furthermore, we defer to the trier of fact on issues of conflicting testimony, witness credibility, and persuasiveness of the evidence. In addition to listening to and watching E.O. on the witness stand, the jury also observed Ramirez-Estevez's demeanor as he denied having raped her. We do not second guess the jury, which obviously believed E.O. and not Ramirez-Estevez.

Ramirez-Estevez, 164 Wn. App. at 293-94 (citation omitted).

Here, as in Ramirez-Estevez, the jury heard M.W.'s testimony about Crockett's rapes and observed M.W.'s demeanor on the witness stand, including during her extensive cross-examination by Crockett's trial counsel. As in Ramirez-Estevez, that cross-examination diminished the type of prejudice that could have resulted from the admission of Brooks' and Campbell's testimony had M.W. not been subject to cross-examination at trial. And, as in Ramirez-Estevez, the jury also observed the defendant deny the charges and clearly did not believe him. Although in Ramirez-Estevez there was additional testimony from a nurse practitioner, who had testified that notches on a hymen do not always mean

8

sexual abuse and that E.O.'s notches were consistent with the story that E.O. had told her, that testimony was not, as the court observed, conclusive. Ramirez-Estevez, 164 Wn. App. at 288, 293. Furthermore, in this case, M.W.'s testimony was corroborated at least in part by Rhonda's and Crockett's own testimony that M.W. had complained of Crockett's abuse as early as 2008. For these reasons, Crockett cannot satisfy his burden to demonstrate a substantial likelihood that the result of the trial would have been different had M.W.'s statements to Brooks and Campbell not been admitted. See State v. Hendrickson, 129 Wn.2d 61, 79, 917 P.2d 563 (1996) (defendant alleging ineffective assistance bears burden of showing prejudice).

Crockett argues that his trial counsel's failure to object was prejudicial because, in closing, the State emphasized the consistency between M.W.'s testimony and her statements to Brooks and Campbell. He points to three instances in the State's closing in which the State noted that what M.W. said to Brooks and Campbell was consistent with M.W.'s testimony at trial. But the State used the majority of its closing argument to question Crockett's credibility, explain why M.W.'s memory might lack specific details concerning events that occurred when M.W. was only 12 years old, question Rhonda's credibility, and theorize as to why M.W. did not report Crockett's abuse right away. The record does not reflect, as Crockett suggests, that the State substantially relied on the statements that M.W. made to Brooks and Campbell. Furthermore, the State repeatedly made clear to the jury that M.W.'s word alone was enough to convict if the jury believed M.W. Crockett's argument is unpersuasive, and because Crockett has

not established prejudice, his ineffective assistance claim fails.

*Ineffective Assistance of Appellate Counsel*

To prevail on a claim of ineffective assistance of appellate counsel, Crockett "must show that 'the legal issue that appellate counsel failed to raise had merit' and that 'he . . . was actually prejudiced by appellate counsel's failure to raise the issue.'" In re Pers. Restraint of Meredith, 191 Wn.2d 300, 308, 422 P.3d 458 (2018) (quoting In re Pers. Restraint of Dalluge, 152 Wn.2d 772, 777-78, 100 P.3d 279 (2004)). To establish prejudice, Crockett must show there is a reasonable probability that but for his counsel's deficient performance, he would have prevailed on his appeal. Meredith, 191 Wn.2d at 308. "Failure to raise all possible nonfrivolous issues on appeal is not ineffective assistance." In re Pers. Restraint of Lord, 123 Wn.2d 296, 314, 868 P.2d 835 (1994).

Here, Crockett argues that appellate counsel was ineffective for failing to raise the following two issues: (1) the trial court's refusal to admit additional text messages from M.W.'s phone and (2) the trial court's exclusion of Crockett's reputation and character witnesses. We disagree.

*(1) Refusal To Admit Text Messages*

Relevant evidence is generally admissible. ER 402. But under ER 403, even relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." On appeal, the trial court's decision to exclude evidence is reviewed for abuse of discretion, a standard

pursuant to which the reviewing court will find error only when the trial court's decision is manifestly unreasonable or is exercised on untenable grounds or for untenable reasons. State v. Brown, 132 Wn.2d 529, 571-72, 940 P.2d 546 (1997).

Here, Crockett attempted to introduce screen shots of eight text messages from M.W.'s phone, arguing that they revealed M.W.'s bias against Rhonda. After reviewing the text messages in camera, the court ruled that only two were admissible. In one, M.W. wrote, "Me and my brother have a plan to get justice." In the other, M.W. wrote, about Rhonda, "And I don't want to let myself get to[o] mad because I feel like driving a knife through her sometimes." The trial court excluded at least one of the other messages as cumulative because it also indicated M.W.'s desire to do bodily harm. The court excluded another because the statement therein that "we w[i]ll handle [Rhonda's] husband [i]n due time" was not written by M.W., but by someone else. The court also indicated it selected one of the text messages that it did because it included more context of the conversation than the other screen shots provided by Crockett. Finally, the court explained that the two text messages it admitted would allow Crockett to pursue his theory of the case, implying that the remaining text messages would have been cumulative.

To that end, the text messages that the trial court excluded simply bolster the fact that M.W. was angry at her mother, had thoughts of hurting her, and desired to move back to Tennessee (where her biological family lived)—all themes that were fully explored during M.W.'s testimony. Indeed, M.W. freely

11

admitted that she felt hurt by Rhonda, wanted to hurt her back by leaving for Tennessee and not returning, and that this was her "plan for justice." In short, although the trial court did not expressly cite ER 403, it is apparent from the record that the trial court considered the cumulative nature of the additional text messages. Thus, even assuming that the issue would have had merit on appeal, Crockett cannot show that, within reasonable probabilities, the appellate court would have concluded that the trial court abused its discretion by excluding the additional text messages—much less that any error would have required reversal. Therefore, Crockett's appellate counsel was not ineffective.

Crockett argues that it was error for the trial court to base its decision to exclude the text messages on its perception that Crockett's trial counsel was tardy in disclosing the information. But although the trial court did express considerable disgruntlement with Crockett's counsel's failure to comply with a discovery deadline, the record reveals that was not the sole basis for its ruling. As discussed, other evidentiary considerations supported the trial court's exercise of its discretion to exclude the additional messages. Crockett's argument is not persuasive.

Relying on Holmes v. South Carolina, 547 U.S. 319, 126 S. Ct. 1727, 164 L. Ed. 2d 503 (2006), Crockett next contends that the court's exclusion of the additional text messages deprived him of his constitutional right to present a defense. But Holmes involved a defendant who was prohibited from introducing third-party guilt evidence under a South Carolina rule mandating exclusion of such evidence where there is strong evidence of a defendant's guilt. Holmes,

12

547 U.S. at 328-29. The Supreme Court concluded that the rule was arbitrary and vacated the defendant's conviction on that basis. Holmes, 547 U.S. at 331. Here, Crockett neither raised a third-party guilt defense nor argued that ER 403 is an arbitrary rule. Indeed, any such argument would be without merit, particularly where even the Holmes court recognized that "the Constitution permits judges 'to exclude evidence that is repetitive . . . , only marginally relevant or poses an undue risk of harassment, prejudice, [or] confusion of the issues.'" Holmes, 547 U.S. at 326-37 (alterations in original) (internal quotation marks omitted) (quoting Crane v. Kentucky, 476 U.S. 683, 689-90, 106 S. Ct. 2142, 90 L. Ed. 2d 636 (1986)). Crockett's reliance on Holmes is misplaced.

Crockett's reliance on Crane is also misplaced. In Crane, there was a "complete absence of identifying physical evidence," and therefore the prosecution's case relied in large part on the defendant's confession. Crane, 476 U.S. at 684. The defendant tried to introduce evidence about the circumstances under which the confession was obtained in an effort "to paint a picture of a young, uneducated boy who was kept against his will in a small, windowless room for a protracted period of time until he confessed." Crane, 476 U.S. at 691. The trial court excluded that evidence. Crane, 476 U.S. at 686. The Supreme Court ultimately reversed, explaining that evidence of the circumstances surrounding the confession was "all but indispensable to any chance of [the defense's theory] succeeding" and that there was no "rational justification [provided] for the wholesale exclusion" of the defendant's proffered evidence. Crane, 476 U.S. at 691. Here, unlike in Crane, there was no "wholesale

exclusion" of evidence that was indispensable to Crockett's defense theory. Rather, Crockett's counsel extensively cross-examined M.W. at trial, and M.W. made no secret of the fact that Rhonda frequently punished her harshly, or that she would get angry at Rhonda and wanted to hurt her. Crockett was not, like the defendant in Crane, deprived of his right to present a defense. Crane does not control.

Crockett also relies on Davis v. Alaska, 415 U.S. 308, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974), to argue that the trial court's exclusion of the additional text messages deprived him of his constitutional right to impeach M.W. But in Davis, the defendant's being prohibited from inquiring about a witness's motives resulted in the witness's testimony going unchallenged. Davis, 415 U.S. at 314-15. Here, again, Crockett's counsel was able to extensively question M.W. about her anger and bias against her mother, feelings that M.W. freely admitted.

Crockett also asserts that the trial court was required to apply a three-pronged test before deciding to exclude the additional text messages. He cites State v. Darden, 145 Wn.2d 612, 41 P.3d 1189 (2002), for this proposition. But Darden does not support Crockett's assertion. Indeed, the Darden court held that the three-pronged Hudlow test did not apply in that case, observing that the Hudlow test was originally applied "to protect a rape victim from prejudice resulting from the introduction of irrelevant sexual background." Darden, 145 Wn.2d at 623 (discussing State v. Hudlow, 99 Wn.2d 1, 659 P.2d 514 (1983)). Here, no such background evidence was elicited, and Crockett's argument that the Hudlow test was required is not persuasive. Cf. State v. French, 157 Wn.2d

14

593, 605, 141 P.3d 54 (2006) (holding, without discussing or applying the Hudlow test, that the trial court properly excluded relevant impeachment evidence under ER 403 where "the record already contained sufficient evidence to allow the parties to argue their theories to the jury").

As a final matter, Crockett argues that the trial court's exclusion of the additional text messages prevented him from arguing that M.W. "wanted the money being paid to Rhonda for herself." But nothing in the record indicates that M.W.'s alleged desire for money was part of Crockett's defense theory. Indeed, even Crockett's trial counsel's after-the-fact declaration does not mention this theory, and Crockett did not discuss M.W.'s alleged desire for money when asking the trial court to admit M.W.'s text messages. In other words, had Crockett's appellate counsel raised this issue, it would have been without merit because Crockett did not advance this theory at the trial court. See State v. Kilponen, 47 Wn. App. 912, 918, 737 P.2d 1024 (1987) (theory not presented to trial court may not be considered on appeal). Accordingly, Crockett's appellate counsel was not ineffective for not raising it.

(2) Exclusion of Reputation Witnesses

Crockett asserts that had the trial court allowed it, he would have presented: (a) testimony from Rhonda that no one else had ever accused Crockett of sexual assault, (b) testimony from Regina and Charles Harris as to Crockett's reputation for truthfulness in the community, and (c) testimony from

Regina Harris as to Crockett's reputation for sexual morality.[3] Crockett argues that his appellate counsel was ineffective by failing to challenge the trial court's exclusion of this testimony. We disagree.

### a. Rhonda's Testimony

As an initial matter, the State asserts that the trial court did not make a ruling on the introduction of Rhonda's testimony, but this assertion is incorrect. The trial court stated that this testimony is "just outright prohibited, again, unless there's some exception to the general rule regarding this." That "general rule" provides that "[e]vidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion." ER 404(a). But under ER 404(a)(1), "[e]vidence of a pertinent trait of character offered by an accused" is admissible if proved using one of the methods set forth in ER 405. State v. Mercer-Drummer, 128 Wn. App. 625, 630, 116 P.3d 454 (2005). ER 405 provides that proof of character may be made "by testimony as to reputation," and if character is an "essential element of a charge, claim, or defense," proof may be made by specific instances of a person's conduct.

Here, even assuming that character was an essential element of the crimes with which Crockett was charged, Rhonda's proffered testimony that no one else had ever accused Crockett of sexual assault constitutes neither a specific instance of Crockett's conduct nor reputation testimony. Accordingly,

---

[3] Because Regina Harris and Charles Harris share a last name, we refer to them hereafter by their first names.

Rhonda's testimony was not an acceptable method of proving character. Moreover, Rhonda's testimony would likely have been inadmissible because Rhonda cannot have personal knowledge as to whether anyone else has *ever* accused Crockett of sexual assault. See ER 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."). In short, Crockett's argument that the trial court erred by excluding Rhonda's testimony lacks merit and appellate counsel was not ineffective for not raising this argument on appeal.

b. Testimony Regarding Reputation for Truthfulness

Crockett asserts that appellate counsel was ineffective for failing to challenge the trial court's exclusion of Charles and Regina's testimony as to Crockett's reputation for truthfulness. The trial court initially reserved ruling on this issue. It then made a tentative ruling that the testimony might be admissible if Crockett testified. The court properly relied on State v. Deach, 40 Wn. App. 614, 699 P.2d 811 (1985), which holds that under ER 608(a), evidence of a defendant's truthful character is admissible "only after the defendant becomes a witness and his character for truthfulness is attacked." Deach, 40 Wn. App. at 618.

Because the trial court's ruling was tentative, Crockett was obligated to raise the issue at the appropriate point during trial and give the trial court an opportunity to rule. State v. Powell, 126 Wn.2d 244, 257, 893 P.2d 615 (1995). But Crockett did not do so, and thus he waived any error regarding this testimony. Therefore, the issue would not have had merit on appeal, and

17

appellate counsel was not ineffective for not raising it.

c. Regina's Testimony Regarding Sexual Morality

As a final matter, Crockett asserts that he wanted Regina to testify as to his reputation for sexual morality. But he relies solely on his trial counsel's after-the-fact declaration for this assertion, and Crockett does not point to anything in the record indicating that he made the trial court aware that he intended to call Regina to testify on this matter, much less the substance of her testimony. Because Crockett did not make an offer of proof on this matter, he did not preserve this issue for appeal. ER 103(a)(2); see also State v. Ray, 116 Wn.2d 531, 539, 806 P.2d 1220 (1991) (adequate offer of proof requires that substance of testimony be apparent from the record). Furthermore, even if Crockett had preserved the issue, a reputation for sexual morality is not admissible reputation evidence. State v. Jackson, 46 Wn. App. 360, 365, 730 P.2d 1361 (1986) ("Simply put, one's reputation for moral decency is not pertinent to whether one has committed indecent liberties or incest."). Therefore, appellate counsel was not ineffective by not arguing that the trial court erred by excluding Regina's testimony as to Crockett's reputation for sexual morality.

We deny Crockett's petition.

Smith, J.

WE CONCUR:

Mann, J

Appelwick, C.J.

18