[No. 29898-1-III.   Division Three.   December 13, 2012.]

*In the Matter of the Personal Restraint of* GEORGE GOLDEN, *Petitioner.*

*Kenneth H. Kato*, for petitioner.

*Robert M. McKenna, Attorney General, Timothy N. Lang, Senior Assistant,* and *Ronda D. Larson, Assistant,* for respondent.

¶1 KORSMO, C.J. — In its supervision of George Golden following a robbery conviction, the Department of Correc-

tions (DOC) imposed community custody conditions that reflected he was a sex offender. Mr. Golden challenges several conditions of supervision in this personal restraint petition (PRP). We conclude that the challenged conditions were within the authority of DOC and dismiss the petition.

## FACTS

¶2 Mr. Golden was convicted in 2002 of second degree rape and unlawful imprisonment. DOC supervised him upon release from confinement. In 2008 he pleaded guilty to second degree robbery and was sentenced to prison. Just before he was released, the State petitioned to commit Mr. Golden as a sexually violent predator (SVP). The petition later was dismissed after the State's evaluator changed his mind and concluded that Mr. Golden did not meet the SVP criteria.

¶3 DOC imposed numerous supervision conditions on Mr. Golden when he was released. He challenged 13 of those conditions by way of a habeas corpus petition filed in the Spokane County Superior Court. The conditions can generally be characterized as (1) restricting Mr. Golden from being in the presence of minors, (2) prohibiting him from entering into relationships without disclosure and DOC approval, (3) restricting his living locations, and (4) placing temporal and geographic restrictions on his activities.

¶4 The superior court transferred the matter to this court for consideration as a PRP. This court accepted the transfer and appointed counsel for Mr. Golden.

## ANALYSIS

¶5 The petition challenges DOC's conditions for allegedly conflicting with the judgment and sentence, exceeding the department's authority, and constituting additional punishment in violation of the constitution. We will consider each challenge in turn.

¶6 A PRP is an appropriate vehicle for raising challenges that an offender has not had a previous opportunity to present for judicial review. *In re Pers. Restraint of Cashaw*, 123 Wn.2d 138, 148-49, 866 P.2d 8 (1994). In such circumstances relief is available to petitioners who are under an "unlawful restraint." RAP 16.4(a)-(c). The petitioner must state the facts on which he or she bases his or her claim of unlawful restraint and the evidence supporting the allegations; conclusory statements alone are insufficient to do this. RAP 16.7(a)(2)(i); *In re Pers. Restraint of Williams*, 111 Wn.2d 353, 365, 759 P.2d 436 (1988). Mr. Golden has not had the opportunity to previously seek judicial review of these conditions.

¶7 This court applies de novo review to issues of law. *Spokane County v. City of Spokane*, 148 Wn. App. 120, 124, 197 P.3d 1228 (2009). We review the decision to impose supervision conditions for abuse of discretion. *State v. Riley*, 121 Wn.2d 22, 37, 846 P.2d 1365 (1993); *State v. Snedden*, 166 Wn. App. 541, 543, 271 P.3d 298 (2012). Discretion is abused when it is exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

*Conflict with Judgment and Sentence*

¶8 Mr. Golden initially argues that the challenged conditions conflict with those imposed by the trial judge at sentencing. They do not.

¶9 The judgment and sentence imposed the following standard community custody conditions:

While on community placement or community custody, the defendant shall: (1) report to and be available for contact with the assigned community corrections officer [CCO] as directed; (2) work at DOC-approved education, employment, and/or community restitution (service); (3) notify DOC of any change in defendant's address or employment; (4) not consume controlled substances except pursuant to lawfully issued prescriptions; (5) not unlawfully possess controlled substances while in

community custody; (6) pay supervision fees as determined by DOC; and (7) perform affirmative acts necessary to monitor compliance with the orders of the court as required by DOC; (8) for sex offenses, submit to electronic monitoring if imposed by DOC. The residence location and living arrangements are subject to the prior approval of DOC while in community placement or community custody. Community custody for sex offenders not sentenced under RCW 9.94A.712 may be extended for up to the statutory maximum term of the sentence. Violation of community custody imposed for a sex offense may result in additional confinement.

. . . .

Defendant shall have no contact with: [M.B.[1]].

DOC Resp., Ex. 1, at 8-9.

¶10 "The department may not impose conditions that are contrary to those ordered by the court." Former RCW 9.94A.715(2)(c) (2006). The 13 challenged conditions imposed by DOC are:

- No gambling casinos
- Curfew from 5:00 p.m. to 6:00 a.m.
- No sexual contact with anyone without his or her explicit consent and not before informing DOC.
- No contact with areas and facilities where minors are know [sic] to congregate, for example, but not limited to video arcades, malls, playgrounds, fairs, carnivals, parks, schools, or other children play areas. When in doubt, always contact DOC for clarification.
- No residing on premises where minors are also residing and do not stay the night on premises where minors mights [sic] spend the night without permission of CCO/DOC.
- No dating women or men with minor children or form any relationships with families who have minor children without approval of CCO or treatment provider (if applicable).
- No romantic relationships with anyone without full disclosure to that person and not without permission of the Department of Corrections.

---

[1] M.B. was the victim of the robbery.

- Obtain mental health evaluation if directed by DOC and follow all requirements, including taking prescribed medication as directed.

- If participating in the Housing Voucher program, must remain violation free and successfully complete the 120 day Community Justice Center Program.

- If homeless, may only reside at House of Charity or Truth Ministries.

- Must participate and successfully complete the 120 day program at the Community Justice Center.

- Do not operate any motor vehicle.

- No STA [Spokane Transit Authority] plaza.

DOC Resp., Ex. 3.

¶11 The DOC-imposed conditions do not conflict with the standard judgment and sentence conditions. The only ones that remotely overlap involve housing, and there is no conflict between those conditions. The court-imposed housing conditions require that DOC approve the housing locations. The DOC list simply indicates which housing locations are acceptable. The two sets of conditions do not conflict.

¶12 Without explaining himself, Mr. Golden also argues that the DOC conditions violate various constitutional rights. His unsupported and conclusory allegations are insufficient to meet his burdens in this action. *Williams*, 111 Wn.2d at 365.

¶13 Mr. Golden also argues that the DOC-imposed conditions are not crime related. This argument misses the mark. A "crime-related prohibition" is defined as "an order of a *court* prohibiting conduct that directly relates to the circumstances of the crime for which the offender has been convicted." Former RCW 9.94A.030(13) (2006) (emphasis added). This definition does not apply to DOC, which is an agency and not a court. Instead, DOC's authority to impose conditions of community custody on Mr. Golden came from former RCW 9.94A.715(2)(b) (2006), which directed the

department to perform a risk assessment and then impose "additional conditions of the offender's community custody based upon the risk to community safety."[2]

¶14 Nothing in the text of former RCW 9.94A.715, or its successor statute, RCW 9.94A.704, limits DOC's supervisory conditions to those that are "crime related." Instead, it must perform a risk assessment and then impose conditions with public safety in mind. The statute grants DOC broader authority than that given the trial courts in order to follow up on the department's duty to conduct an individualized risk assessment. While the trial court must focus generally on the defendant's crime, the department focuses on the risks posed by the defendant. It thus can, as here, impose conditions related to defendant's history as a sex offender even though he is not being supervised for a sex offense.

¶15 The DOC conditions do not conflict with those imposed by the trial court.

*DOC's Authority*

■■■ ¶16 Mr. Golden next argues that the department has no authority to impose any conditions, but that even if it could, it cannot impose electronic monitoring since he is not being supervised for a sex offense. We again disagree with his position.

¶17 The argument that the department had no authority to impose additional conditions was expressly contradicted by the first sentence of former RCW 9.94A.715(2)(b), as noted previously. The entire provision stated:

> As part of any sentence that includes a term of community custody imposed under this subsection, the court shall also require the offender to comply with any conditions imposed by the department under RCW 9.94A.720. The department shall assess the offender's risk of reoffense and may establish and modify additional conditions of the offender's community custody based upon the risk to community safety. In addition, the

---

[2] That language is now codified in RCW 9.94A.704(2)(a).

department may require the offender to participate in rehabilitative programs, or otherwise perform affirmative conduct, and to obey all laws. *The department may impose electronic monitoring as a condition of community custody for an offender sentenced to a term of community custody under this section pursuant to a conviction for a sex offense.* Within the resources made available by the department for this purpose, the department shall carry out any electronic monitoring imposed under this section using the most appropriate technology given the individual circumstances of the offender. As used in this section, "electronic monitoring" means the monitoring of an offender using an electronic offender tracking system including, but not limited to, a system using radio frequency or active or passive global positioning system technology.

Former RCW 9.94A.715(2)(b) (emphasis added). The explicit grant of authority to DOC in the underlined first sentence could not be clearer. DOC can impose additional conditions of community supervision.

¶18 Mr. Golden makes a more specific argument that DOC could not electronically[3] monitor him, arguing that this authority is available only when supervising a person who was convicted of a sex offense. He bases his argument on the third sentence of former RCW 9.94A.715(2)(b), which is italicized above.[4] That sentence does not bear his construction. The sentence authorizes DOC to use electronic monitoring on sex offenders, but it does not limit DOC to electronically monitoring *only* sex offenders. The statute is permissive, not restrictive.

¶19 DOC argues that it long has had implied authority to monitor offenders electronically given its authority to impose geographic restrictions since at least 2000. *See* LAWS OF 2000, ch. 28, § 25. Analogous support for that argument

---

[3] The parties both state that DOC has been monitoring Mr. Golden with a GPS (global positioning satellite) device, but that condition is not listed among the conditions of supervision that have been supplied to this court. Mr. Golden was classified as a level 3 sex offender, and the record contains evidence that DOC imposes GPS monitoring on all level 3 offenders for at least six months, but no document specific to Mr. Golden has been supplied.

[4] This sentence has been amended and is now codified at RCW 9.94A.704(5).

can be found in *State v. Riles*, 135 Wn.2d 326, 957 P.2d 655 (1998), *abrogated on other grounds by State v. Sanchez Valencia*, 169 Wn.2d 782, 239 P.3d 1059 (2010). *Riles* held that trial courts had implied authority to impose requirements such as polygraph testing in order to monitor compliance with conditions of community custody. *Id.* at 342. Thus, DOC argues it has implied power to use electronic monitoring to enforce geographic restrictions.

¶20 We need not decide the question of implied authority since the express grant to DOC of power to "establish and modify additional conditions" of supervision is an adequate basis to uphold the condition. If its risk assessment establishes the need to limit locations an offender may visit, the authority to impose "additional conditions" includes the power to make electronic monitoring one of the conditions.

¶21 DOC had the authority to impose additional conditions of community custody, including the use of electronic monitoring.

*Double Jeopardy*

¶22 Mr. Golden makes the final argument that imposing conditions of community supervision limiting contacts with minors constitutes additional punishment in violation of the protections against double jeopardy because they relate to the already served 2002 sex offenses rather than the 2008 robbery. We again disagree.

¶23 Appellate courts review claims of double jeopardy de novo. *State v. Jackman*, 156 Wn.2d 736, 746, 132 P.3d 136 (2006). One of the protections ensured by the double jeopardy clause is that a person will not be punished twice for the same offense. *State v. Gocken*, 127 Wn.2d 95, 100, 896 P.2d 1267 (1995).

¶24 Mr. Golden argues that prohibiting him from being in the presence of minors constitutes additional punishment for the 2002 convictions. It does not. The 2002 offenses were committed against an adult woman, not

against a child. DOC imposed the conditions restricting contact with minors because of a series of uncharged and unpunished offenses against minors revealed by his risk assessment. The conditions are not factually related to the 2002 offenses and do not constitute a second punishment for any previous criminal conviction.

¶25 Even if the conditions had been related to prior convictions, however, there still would have been no violation of double jeopardy principles. A restriction does not automatically equate with punishment. In contemplating the question, the United States Supreme Court has recognized that the primary issue is whether the legislature intended the condition to be punishment. *Hudson v. United States*, 522 U.S. 93, 99-100, 118 S. Ct. 488, 139 L. Ed. 2d 450 (1997). Where the intent is unclear, the court set forth a seven factor test to assess the condition. *Id.* Included among the factors, none of which is dispositive, are whether the condition has historically been considered punishment and whether it serves a purpose other than punishment. *Id.*

¶26 We believe the challenged condition of no contact with minors, or any other class of people, has not historically been considered punishment. Judges have long imposed restrictions on contact as conditions of release or of probation or parole without the no-contact provisions being treated as a form of punishment. Most importantly, it is clear that there is a nonpunishment basis for the condition—the protection of a class of people against whom the defendant has previously offended.

¶27 The department's restriction of Mr. Golden's contacts with minors during his period of supervision was not punitive and did not constitute double jeopardy.

¶28 The petition is dismissed.

BROWN and KULIK, JJ., concur.

Review denied at 178 Wn.2d 1001 (2013).