2014 APR 21 AM 11: 51



IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | NO. 69402-2-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| ROBERT WILLIE RACHELS, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: April 21, 2014 |
| | ) | |

LAU, J. — Robert Rachels appeals the sentencing court's denial of his "motion to clarify conditions of sentence." He argues the court improperly delegated a sentencing condition to his community corrections officer (CCO). Finding no error, we affirm.

FACTS

The State initially charged Robert Rachels with one count of first degree child molestation and one count of communicating with a minor for immoral purposes. After plea negotiations, the State amended the information to charge Rachels with three counts of communication with a minor for immoral purposes.

The certification for determination of probable cause describes the facts underlying the charges.[1] Rachels's nine-year-old granddaughter, JIB, reported that over the course of several years Rachels talked to her about sexual intercourse, described to her the details of his past sexual relations with others, took her to locations where he had engaged in sexual intercourse, and showed her pornographic magazines. JIB also reported that Rachels touched her buttocks and breasts.

Rachels pleaded guilty as charged in the amended information. His plea agreement indicated he would be subject to "supervised probation under the jurisdiction of and subject to standard rules of supervision of the Washington Department of Corrections." On June 1, 2012, the sentencing court imposed a suspended sentence of 364 days' confinement with credit for time served for count one and imposed no additional confinement for counts two and three. The court also ordered 24 months' probation but later entered an order clarifying that "the 24 months of supervision ordered by the court shall be 12 months of supervised [Department of Corrections] supervision and 12 months of unsupervised supervision."[2]

As a condition of his probation, the court ordered Rachels to comply with the Department of Corrections' [DOC] standard rules and regulations of supervision. DOC's standard conditions included requirements that Rachels notify his CCO before changing residence and that Rachels "avoid contact with victim or minor children of similar age or

---

[1] Rachels stipulated that the facts set forth in the certification for determination of probable cause were real and material facts for sentencing purposes.

[2] Under RCW 9.95.210(4), the DOC may supervise misdemeanant probationers for up to 12 months of probation.

close proximity where minors congregate, UNLESS authorized by the CCO." DOC's "conditions, requirements, and instructions" also informed Rachels that the terms of his supervision "can be revoked, modified, or changed at any time during the course of supervision." As additional conditions of probation, the court also ordered Rachels to "[f]ollow treatment recommendations as set forth in 4/27/12 evaluation by Michael Compte."[3]

In September 2012, Rachels filed a "motion to clarify conditions of sentence" requesting that the court issue an order "specifying that Mr. Rachels is not required, under the terms of his sentence, to live at an address that has been approved in advance by the Department of Corrections." Defense counsel's declaration in support of the motion stated that after his release, Rachels had trouble finding housing because he was a registered sex offender. Rachels found a landlord willing to rent him an apartment at 1215 East Spring Street. He moved into the apartment and registered at that address. However, Rachels's CCO Pat Tanaka told Rachels that he must live in DOC-approved housing while he is on probation. Tanaka declined to approve Rachels's East Spring Street residence because a Seattle University dormitory was located on the same street. Tanaka told Rachels he would be in violation of his probation conditions if he continued to live at the East Spring Street address but indicated that the DOC would no longer consider Rachels in violation if he obtained a court order clarifying that he need not obtain DOC approval for his housing.

---

[3] Although the court's judgment and sentence referenced Michael Compte's evaluation and treatment recommendations, they were not designated in the record on appeal. As a result, we lack a complete record of Rachels's probation conditions for review. The portions of Compte's evaluation and treatment recommendations quoted in this opinion are taken from the verbatim report of proceedings.

At a September 6 hearing on Rachels's motion to clarify, defense counsel argued that Rachels should be permitted to live at the East Spring Street address because no sentencing condition required DOC approval for housing. Counsel requested the court to enter an order to that effect. During the hearing, the court quoted from Compte's evaluation: "'Analysis of static and dynamic risk factors would suggest Mr. Rachels is at moderate risk for further criminal behavior. . . . As long as he does not have unsupervised access to children in the future, the risk to repeat that behavior is likely low.'" Report of Proceedings (RP) (Sept. 6, 2012) at 25. After hearing argument, the court indicated it wanted to hear from CCO Tanaka before deciding the motion.

At the subsequent September 12 hearing on the matter, CCO Tanaka appeared by telephone. Tanaka explained that Rachels's apartment location was "a concern to both his therapy and to the [DOC]" due to its "close proximity" to female dormitories at Seattle University. RP (Sept. 12, 2012) at 32. As a result, the DOC denied Rachels's request to transfer to its Seattle unit and Tanaka informed him he could not live at the East Spring Street apartment. Tanaka told the court that he advised Rachels not to sign a lease at that apartment and provided Rachels with alternative available housing options.

The sentencing court denied Rachels's motion to live at an address not approved by his CCO. It reasoned:

> I mean, that's the whole point in having the CCO monitor this and make the decisions is that it is much more tailored I think to the individuals and am I going to kind of micro manage CCOs in general or Mr. Tanaka in specifically in various aspects of the supervision? And the answer is no.

RP (Sept. 12, 2012) at 38-39. Rachels appeals.

-4-

## ANALYSIS

Rachels raises primarily a legal issue—whether the sentencing court improperly delegated its authority to the DOC. He correctly notes that the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW, applies to felonies. RCW 9.94A.010; RCW 9.94A.905; State v. Williams, 97 Wn. App. 257, 263, 983 P.2d 687 (1999). As charged and pleaded here, communication with a minor for immoral purposes is a gross misdemeanor. RCW 9.68A.090(1). However, as discussed below, we conclude Rachels is subject to the SRA's provisions regarding community custody.

Our trial courts have great discretion in imposing sentences within the statutory limits for misdemeanors and gross misdemeanors.

> This broad discretion is consistent with the tradition in American criminal jurisprudence affording wide latitude to sentencing judges on grounds that "the punishment should fit the offender and not merely the crime." While the Sentencing Reform Act of 1981 (SRA) places substantial constraints on this historical discretion in felony sentencing, no similar legislation restricts the trial court's discretion in sentencing for misdemeanors or gross misdemeanors.

State v. Anderson, 151 Wn. App. 396, 402, 212 P.3d 591 (2009) (internal quotation marks and footnote omitted) (quoting State v. Herzog, 112 Wn.2d 419, 423-24, 771 P.2d 739 (1989)). Courts may impose any sentence up to one year in jail for gross misdemeanors. RCW 3.66.060; RCW 9A.20.021(2); RCW 9.92.020; RCW 9.95.210.

"[I]n granting probation, the superior court may suspend the imposition or the execution of the sentence and may direct that the suspension may continue upon such conditions and for such time as it shall designate, not exceeding the maximum term of sentence or two years, whichever is longer." RCW 9.95.210(1)(a). Further, "the superior court may order the probationer to report to the secretary of corrections or such

officer as the secretary may designate and as a condition of the probation to follow the instructions of the secretary for up to twelve months." RCW 9.95.210(4). "The secretary of corrections will promulgate rules and regulations for the conduct of the person during the term of probation." RCW 9.95.210(5) (emphasis added).

Relevant to the crimes at issue here, RCW 9.94A.501 provides:

> [DOC] shall supervise the following offenders who are sentenced to probation in superior court, pursuant to RCW 9.92.060, 9.95.204, or 9.95.210:
> (a) Offenders convicted of:
> …
> (iii) Communication with a minor for immoral purposes . . . .

RCW 9.94A.501(1)(a)(iii) (emphasis added). This provision is part of the SRA. Thus, DOC must supervise offenders convicted of communication with a minor for immoral purposes who are sentenced to probation. "Misdemeanor and gross misdemeanor offenders supervised by the department pursuant to [RCW 9.94A.501] shall be placed on community custody." RCW 9.94A.501(2) (emphasis added).

Rachels contends he is not subject to the SRA because he was sentenced for a misdemeanor. However, he does not dispute that the sentencing court ordered a period of probation—12 months of which is mandatory DOC-supervised community custody under RCW 9.94A.501(a)(iii). RCW 9.94A.704(1) provides, "Every person who is sentenced to a period of community custody shall report to and be placed under the supervision of [DOC], subject to RCW 9.94A.501." The SRA defines "offender" as follows:

> "Offender" means a person who has committed a felony established by state law and is eighteen years of age or older or is less than eighteen years of age but whose case is under superior court jurisdiction under RCW 13.04.030 or has been transferred by the appropriate juvenile court to a criminal court pursuant to RCW 13.40.110. In addition, for the purpose of community custody requirements

-6-

under this chapter, "offender" also means a misdemeanant or gross misdemeanant probationer ordered by a superior court to probation pursuant to RCW 9.92.060, 9.95.204, or 9.95.210 and supervised by the department pursuant to RCW 9.94A.501 and 9.94A.5011. Throughout this chapter, the terms "offender" and "defendant" are used interchangeably.

RCW 9.94A.030(34) (emphasis added). Thus, the SRA explicitly makes gross misdemeanant probationers under DOC supervision—as Rachels is here—subject to the SRA's provisions for purposes of community custody requirements.

RCW 9.94A.704 expressly empowers DOC to impose conditions of supervision on offenders. Relevant here, RCW 9.94A.704(2)(a) provides that DOC "shall assess the offender's risk of reoffense and may establish and modify additional conditions of community custody based upon the risk to community safety." Further, DOC "may require the offender to participate in rehabilitative programs, or otherwise perform affirmative conduct . . . ." RCW 9.94A.704(4). The trial court must order the offender to comply with any conditions DOC imposes under RCW 9.94A.704, as long as the DOC's conditions do not contravene or decrease court-ordered conditions. See RCW 9.94A.703(1)(b); RCW 9.94A.704(2)(a), (6); 13B SETH A. FINE & DOUGLAS J. ENDE, WASHINGTON PRACTICE: CRIMINAL LAW § 3607, at 183-84 (2d ed. 2012-13) (DOC-imposed community custody conditions are mandatory).

> While it is the function of the judiciary to determine guilt and impose sentences, "the execution of the sentence and the application of the various provisions for the mitigation of punishment and the reformation of the offender are administrative in character and are properly exercised by an administrative body, according to the manner prescribed by the legislature."

State v. Sansone, 127 Wn. App. 630, 642, 111 P.3d 1251 (2005) (quoting State v. Mulcare, 189 Wn. 625, 628, 66 P.2d 360 (1937)).

Nothing in the text of RCW 9.94A.704 limits DOC supervisory conditions to those that are crime related.

> Instead, [DOC] must perform a risk assessment and then impose conditions with public safety in mind. The statute grants DOC broader authority than that given the trial courts in order to follow up on the department's duty to conduct an individualized risk assessment. While the trial court must focus generally on the defendant's crime, the [DOC] focuses on the risks posed by the defendant.

In re Golden, 172 Wn. App. 426, 433, 290 P.3d 168 (2012) (interpreting RCW 9.94A.704 and its predecessor statute, former RCW 9.94A.715). Division Two of this court recently rejected a defendant's argument that the sentencing court improperly delegated to DOC the specifics of his community custody conditions:

> Here, the sentencing court properly delegated the specifics of McWilliams's community custody conditions to the DOC. Unlike the cases McWilliams relies on, he does not challenge a specific court-created condition. See [State v.] Sanchez Valencia, 169 Wash.2d [782, 794-95], 239 P.3d 1059 [(2010)] (the court prohibited Valencia's possession of paraphernalia); State v. Zimmer, 146 Wash. App. 405, 413, 190 P.3d 121 (2008) (the court prohibited Zimmer's possession of a cell phone). Instead, McWilliams challenges whether the sentencing court may ask the DOC to establish additional conditions based on the community's risk. RCW 9.94A.704(2)(a) authorizes the DOC to "establish and modify additional conditions of community custody based upon the risk to community safety." Further, the court's delegation of the specifics of community custody conditions to DOC was within DOC's authority set by Sansone. Therefore, the sentencing court did not impermissibly delegate sentencing authority to the DOC.

State v. McWilliams, 177 Wn. App. 139, 154, 311 P.3d 584 (2013), review denied, 318 P.3d 279 (2014).

Here, the sentencing court properly delegated to DOC the specifics of Rachels's community custody conditions. As noted above, Rachels is an "offender" under the SRA for purposes of community custody conditions. RCW 9.94A.704, Golden, and McWilliams undermine Rachels's argument that the DOC has no authority to impose

additional conditions. As the court in Golden explained, "The explicit grant of authority

to DOC [in former RCW 9.94A.715(2)(b)'s first sentence] could not be clearer. DOC

can impose additional conditions of community supervision." Golden, 172 Wn. App. at

434. Rachels does not contend that DOC's housing approval requirement is contrary to

or "contravene[s] or decrease[s] court-imposed conditions."[4] RCW 9.94A.704(6).

Although Rachels's community custody terms included a CCO's exercise of discretion,

the sentencing court had statutory authority to delegate this power in this manner.[5] The

court acted within its statutory authority and adhered to RCW 9.94A.703(1)(b)'s

requirement that it order Rachels to comply with his CCO's directives.[6]

---

[4] Rachels merely argues that nothing in the judgment and sentence prohibits him from living near minors or requires him to obtain his CCO's approval before living at a residence. As discussed above, DOC has authority to impose conditions separate from those imposed in the judgment and sentence based on its risk assessment and considerations of public safety. Golden, 172 Wn. App. at 433.

[5] We note that offenders who disagree with DOC's additional conditions or modifications following a risk assessment are not without a remedy. "By the close of the next business day after receiving notice of a condition imposed or modified by the department, an offender may request an administrative review under rules adopted by the department." RCW 9.94A.704(7)(b). To the extent Rachels challenges the circumstances and rationale behind DOC's requirement that he live in DOC-approved housing, these arguments are more properly addressed in the administrative review context.

[6] Relying on language from State v. Williams, 97 Wn. App. 257, 983 P.2d 687 (1999), Rachels contends that the sentencing court "erred in denying the motion to clarify that the CCO lacked the authority to impose the residence condition in the absence of judicial ratification." Appellant's Br. at 5. In Williams, the court rejected an argument that the judgment and sentence improperly delegated authority to the Probation Department to set the terms of probation, noting that the district court retained the right to "ratify" the conditions and that the defendant had the right to a hearing over any terms of probation. Williams, 97 Wn. App. at 264-65. Rachels contends this language requires the court to ratify any DOC-imposed conditions. We disagree. In Williams, the defendant pleaded guilty to five misdemeanor counts: vehicle prowling, possession of stolen property, fourth degree assault, malicious mischief, and

## CONCLUSION

The sentencing court properly denied Rachels's motion to clarify his sentence.

We affirm.

WE CONCUR:

brandishing a weapon. Williams, 97 Wn. App. at 259-60. A district court commissioner sentenced the defendant to jail time with all but 30 days suspended, a 2-year probationary period, and a fine. Williams, 97 Wn. App. at 260. The defendant was under the supervision of the Probation Department, not the Department of Corrections. Indeed, the court noted, "The SRA does not control the imposition of probationary conditions upon misdemeanant offenders." Williams, 97 Wn. App. at 263. As discussed above and distinguished from the defendant in Williams, Rachels is under DOC supervision and the statutory scheme for his particular crime explicitly subjects him to the SRA's provisions regarding community custody conditions. Williams is inapposite. No ratification was necessary here.