**NOTICE:  SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Filed
Washington State
Court of Appeals
Division Two

March 29, 2022

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>Respondent,<br><br>v.<br><br>ANTONIO LORENZO ORTEGA,<br><br>Appellant. | No. 54503-9-II<br><br><br><br>PUBLISHED OPINION |

GLASGOW, A.C.J.—Antonio Lorenzo Ortega challenges a condition of his community custody allowing a community corrections officer (CCO) to establish crime-related prohibitions. He asserts this condition is an impermissible delegation of sentencing authority, not crime related, and unconstitutionally vague. Ortega also challenges the imposition of discretionary legal financial obligations (LFOs) in his judgment and sentence as contrary to the sentencing court's stated intention to waive all nonmandatory LFOs.

The Department of Corrections has statutory authority to impose crime-related conditions. The sentencing court did not abuse its discretion when it recognized this authority already granted by statute, and the recognition was not unconstitutionally vague. Because the sentencing court stated its intent to waive all nonmandatory LFOs, we remand for the court to strike the supervision fees, community placement fees, and collection costs from Ortega's judgment and sentence, but we otherwise affirm.

No. 54503-9-II

FACTS

A jury found Ortega guilty of four counts of drive-by shooting. The sentencing court found that all four counts involved the same criminal conduct, and it imposed a sentence of 12 months and 1 day of confinement. It also sentenced Ortega to 18 months of community custody.

During the sentencing hearing, the court stated, "I'm going to waive the nonmandatory [LFOs]." Verbatim Report of Proceedings (VRP) (Mar. 24, 2020) at 25. The sentencing court imposed the crime victim assessment fee and DNA collection fee, which the State described as "not waivable," and agreed that this would amount to $600 of obligations. *Id.* It crossed out the $200 criminal filing fee listed on Ortega's judgment and sentence.

Within Ortega's judgment and sentence, boilerplate language regarding community custody required him to "pay supervision fees as determined by" the Department and to "abide by any additional conditions imposed by [the Department] under RCW 9.94A.704 and .706." Clerk's Papers (CP) at 108. Boilerplate language also required Ortega to "pay the costs of services to collect unpaid [LFOs] per contract or statute." CP at 106. Appendix F to the judgment and sentence also required that Ortega "pay community placement fees as determined by" the Department. CP at 113.

Where the judgment and sentence stated that Ortega must "comply with the following crime-related prohibitions," the sentencing court wrote, "Per CCO." CP at 108. Where appendix F repeated that Ortega must "comply with any crime-related prohibitions," the sentencing court again wrote, "Per CCO." CP at 113.

2

No. 54503-9-II

Ortega challenges the condition of community custody allowing a CCO to establish crime-related prohibitions, as well as the imposition of supervision fees, community placement fees, and collection costs.

ANALYSIS

I. CRIME-RELATED PROHIBITIONS: PER CCO

Ortega explains that by "failing to define the condition [to comply with crime-related prohibitions], the court grants the [CCO] unfettered authority to define the content of the restriction," and he argues this was "an impermissible delegation of authority." Br. of Appellant at 1. Ortega also argues the condition requiring him to comply with "'crime-related prohibitions: Per CCO'" is unconstitutionally vague because it provides "no discernable standards and no protection against arbitrary enforcement." *Id.* at 4. We disagree that the sentencing court delegated authority, and we hold that this condition is not unconstitutionally vague.

A.     RAP 2.5(a)

The State argues Ortega's challenge is not reviewable because he failed to object to this condition below. This court *may* refuse to review claims of error that were not first raised to the trial court. RAP 2.5(a). The rule contains an exception, however, for claims of "manifest error affecting a constitutional right." RAP 2.5(a)(3). Thus, Ortega may raise a constitutional vagueness challenge to a condition of community custody for the first time on appeal. *See State v. Padilla*, 190 Wn.2d 672, 677, 416 P.3d 712 (2018).

Whether Ortega may argue for the first time on appeal that the sentencing court impermissibly delegated its authority to impose crime-related prohibitions is a more complicated question. A defendant may argue for the first time on appeal that their sentence was "imposed

No. 54503-9-II

without statutory authority." *State v. Julian*, 102 Wn. App. 296, 304, 9 P.3d 851 (2000); *see also State v. Jones*, 118 Wn. App. 199, 204, 76 P.3d 258 (2003) (permitting a defendant to challenge multiple conditions of community custody on appeal "even though he failed to object below"). However, Division One of this court has refused to consider an argument that "the sentencing court improperly delegated its duty to define crime-related prohibitions" for the first time on appeal because any improper delegation affected a statutory right, rather than a constitutional one. *State v. Smith*, 130 Wn. App. 721, 728, 123 P.3d 896 (2005). This court has also previously described the propriety of a trial court's delegation of sentencing authority as a "statutory question." *State v. McWilliams*, 177 Wn. App. 139, 153, 311 P.3d 584 (2013). The RAP 2.5(a)(3) exception is limited to constitutional questions.

Because the propriety of any delegation is a statutory question involving an exercise of the sentencing court's discretion, this court has discretion to decline to consider the argument for the first time on appeal under RAP 2.5(a)(3). *See Smith*, 130 Wn. App. at 728. But because Ortega's delegation argument, "crime-related" argument, and constitutional vagueness argument are interrelated, we exercise our discretion under RAP 2.5(a) and consider all of these claims together.

B.    Crime-Related Conditions and Delegation of Sentencing Authority

Ortega argues the condition requiring him to comply with "'crime-related prohibitions: Per CCO'" is too vague and ambiguous to be sufficiently crime related. Br. of Appellant at 9 (emphasis omitted) (quoting CP at 108). He contends imposing "crime-related prohibitions" is a matter of judicial discretion and the sentencing court improperly "abdicated its responsibility and delegated an entire category of conditions to the CCO." *Id.* at 10. Because it is "impossible to evaluate in

4

No. 54503-9-II

advance whether the conditions the CCO ultimately chooses to enforce will be crime-related," he argues "the problem circles back to vagueness." *Id.* We disagree.

Under the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW, "*the court* may order an offender to . . . [c]omply with any crime-related prohibitions" in its discretion "[a]s part of any term of community custody." RCW 9.94A.703(3)(f) (emphasis added); *see also* RCW 9.94A.505(9) (granting the court authority to impose these conditions "[a]s a part of any sentence"). The SRA specifically defines a "crime-related prohibition" as "an order *of a court* prohibiting conduct that directly relates to the circumstances of the crime for which the offender has been convicted." RCW 9.94A.030(10) (emphasis added); *see also In re Pers. Restraint of Golden*, 172 Wn. App. 426, 432, 290 P.3d 168 (2012) (noting that the definition of "'crime-related prohibition'" refers specifically to "'an order of a *court*,'" so it does not apply to the Department (quoting former RCW 9.94A.030(13) (2006))).

However, "community custody" is, by definition, a portion of the offender's sentence that is "served in the community subject to controls placed on the offender's movement and activities by the [D]epartment." RCW 9.94A.030(5). The sentencing court must require that the offender "comply with *any* conditions imposed by the [D]epartment under RCW 9.94A.704." RCW 9.94A.703(1)(b) (emphasis added). RCW 9.94A.704(2)(a) allows the Department to "establish and modify additional conditions of community custody based upon the risk to community safety." Additional conditions imposed by the Department will be upheld "unless the reviewing officer finds that [the condition] is not *reasonably related to the crime of conviction*, the offender's risk of reoffending, *or* the safety of the community." RCW 9.94A.704(7)(b) (emphasis added). Because the Department is not limited to imposing crime-related conditions, its authority to impose

5

No. 54503-9-II

conditions of community custody is actually broader than the sentencing court's authority. *Golden*, 172 Wn. App. at 433.

Here, the State argues that "[a]lthough RCW 9.94A.704, unlike RCW 9.94A.703, does not specifically provide for [the Department]'s imposition of 'crime-related prohibitions,' the statute read as a whole clearly conveys that [the Department] is authorized to impose conditions related to the offender's crime." Br. of Resp't at 6. According to the State, the challenged community custody condition "merely communicates [the Department]'s legislatively-provided authority to set crime-related conditions." *Id.* at 7. The State's position is consistent with prior opinions of this court. For example, we have previously upheld a requirement to comply with "crime-related prohibitions 'per [Department]/CCO'" because the Department has statutory authority under RCW 9.94A.704 to determine "the specifics" of community custody. *McWilliams*, 177 Wn. App. at 146, 154. We hold the sentencing court's recognition of the Department's authority to impose crime-related conditions is consistent with the Department's existing authority under the SRA.

C.      Constitutional Vagueness

The federal and state constitutions require that individuals "be afforded fair warning of proscribed conduct." *State v. Hai Minh Nguyen*, 191 Wn.2d 671, 678, 425 P.3d 847 (2018). This requirement applies to conditions of community custody. *In re Pers. Restraint of Sickels*, 14 Wn. App. 2d 51, 64, 469 P.3d 322 (2020). A condition "is unconstitutionally vague if (1) it does not sufficiently define the proscribed conduct so an ordinary person can understand the prohibition or (2) it does not provide sufficiently ascertainable standards to protect against arbitrary enforcement." *Padilla*, 190 Wn.2d at 677.

No. 54503-9-II

The sentencing court required Ortega to comply with "crime-related prohibitions: Per CCO." CP at 108; *see also* CP at 113. An ordinary person can understand that this means Ortega must comply with additional conditions imposed by his CCO under RCW 9.94A.704. The sentencing court did not grant Ortega's CCO unbridled discretion to proscribe conduct because the Department's authority is defined by statute.[1] Thus, this condition is not unconstitutionally vague.

Moreover, the SRA establishes an avenue for review of additional conditions imposed by CCOs to help protect against arbitrary restrictions. When an offender receives notice that an additional condition is being imposed, they "may request an administrative review under rules adopted by the [D]epartment" before the close of the next business day. RCW 9.94A.704(7)(b). "The condition shall remain in effect unless the reviewing officer finds that it is not reasonably related to the crime of conviction, the offender's risk of reoffending, or the safety of the community." *Id.* If there is an unreasonable exercise of discretion in a condition's application, the offender may bring a challenge based on those particular facts through a personal restraint petition. *See Sickels*, 14 Wn. App. 2d at 62-63.

Finally, although we conclude the sentencing court did not err when it imposed a condition requiring Ortega to comply with "crime-related prohibitions: Per CCO," we recognize there are practical concerns with this practice. CP at 108; *see also* CP at 113. There is potential for confusion between the different sources of authority for the sentencing court and the Department regarding the imposition of community custody provisions.

---

[1] Notably, Ortega does not raise a facial challenge to RCW 9.94A.703's or .704's broad authorization for the Department to impose conditions.

No. 54503-9-II

Both the sentencing court and the Department have the authority to impose community custody provisions, but the authority arises from separate statutes. A sentencing court's authority is limited to those conditions of community custody that are crime related. RCW 9.94A.703(3)(c), (d), (f); *see also* RCW 9.94A.505(9). As explained above, the Department's authority is not so limited. *See Golden*, 172 Wn. App. at 432-33 (discussing the distinction between the court's authority and the Department's broader authority under RCW 9.94A.704).

The sentencing court's penning in "Per CCO" for crime-related community custody provisions could be misread as conflating these two sources of authority. As noted above, the boilerplate language on the preprinted judgment and sentence form already required Ortega to comply with the Department's community custody conditions pursuant to RCW 9.94A.704. This preprinted language immediately preceded the crime-related prohibitions blank filled in by the sentencing court. In other words, the judgment and sentence already explicitly set forth Ortega's obligation to follow conditions imposed under the Department's authority, regardless of any "Per CCO" addition penned in by the sentencing court.

Looking at the judgment and sentence standard form as a whole, the blank section where the sentencing court penned in "Per CCO" is designed as a place for the court, if it so chooses, to include its own independently determined, specific, crime-related prohibitions consistent with its own separately derived authority. By simply filling the blank with "Per CCO," the sentencing court redundantly referenced the Department's authority. While perhaps not error, it was unnecessary and arguably created confusion as to the source of authority for the sentencing court's notation.

8

No. 54503-9-II

II. SUPERVISION FEES AND COLLECTION COSTS

Ortega argues this court should strike the supervision fees, placement fees, and collection costs from his judgment and sentence because the record shows the sentencing court "intended to waive all nonmandatory [LFOs]." Reply Br. of Appellant at 2. We agree.

The State argues Ortega failed to preserve this issue when he failed to object to the LFOs below. Because he failed to object to the imposition of these LFOs below, Ortega is not entitled to review as a matter of right. RAP 2.5(a); *State v. Blazina*, 182 Wn.2d 827, 832, 344 P.3d 680 (2015). Nevertheless, appellate courts "regularly exercise their discretion to reach the merits of unpreserved LFO arguments" because LFOs can create a significant hardship for indigent defendants and severely hinder their reintegration into society. *State v. Glover*, 4 Wn. App. 2d 690, 693, 423 P.3d 290 (2018); *see also Blazina*, 182 Wn.2d at 835 (exercising discretion to review an unpreserved LFO claim in light of "[n]ational and local cries for reform of broken LFO systems"). We therefore exercise our discretion and review Ortega's claim.

"Unless waived by the court, as part of any term of community custody, the court shall order an offender to . . . [p]ay supervision fees as determined by the [D]epartment." RCW 9.94A.703(2)(d). Because supervision fees are waivable, they are a discretionary LFO. *State v. Spaulding*, 15 Wn. App. 2d 526, 536, 476 P.3d 205 (2020). The judgment and sentence indicates that community placement was a precursor to community custody. *See* CP at 108 (explaining that community placement applies to offenses committed prior to July 1, 2000).

Similarly, "[t]he superior court *may*, at sentencing or at any time within ten years, assess as court costs the moneys paid for remuneration for services or charges paid to collection agencies

No. 54503-9-II

or for collection services." RCW 36.18.190 (emphasis added). Because the court is not required to assess collection costs as court costs, this is also a discretionary LFO.

The Washington Supreme Court recently concluded that the sentencing court "committed procedural error by imposing a discretionary fee where it had otherwise agreed to waive such fees" and struck the fee. *State v. Bowman*, 198 Wn.2d 609, 629, 498 P.3d 478 (2021). In *Bowman*, the court indicated an intent to waive "'any . . . non-mandatory fees and interest'" during sentencing, but it nevertheless imposed discretionary supervision fees in the written judgment and sentence. *Id.* "Where the record demonstrates that the trial court intended to impose only mandatory LFOs but inadvertently imposed supervision fees, it is appropriate for us to strike the condition of community custody requiring these fees." *State v. Peña Salvador*, 17 Wn. App. 2d 769, 791-92, 487 P.3d 923, *review denied*, 198 Wn.2d 1016 (2021); *see also State v. Dillon*, 12 Wn. App. 2d 133, 152, 456 P.3d 1199, *review denied*, 195 Wn.2d 1022 (2020) (striking supervision fees where it was apparent from the record that "the trial court intended to waive all discretionary LFOs, but inadvertently imposed supervision fees because of its location in the judgment and sentence"). Because collection costs are also discretionary LFOs, we can presume that it is similarly appropriate for us to strike collection costs where the sentencing court expressed an intent to waive all nonmandatory LFOs, but nevertheless imposed discretionary collection costs through boilerplate language in the judgment and sentence.

Here, the sentencing court specifically stated, "I'm going to waive the nonmandatory [LFOs]." VRP (Mar. 24, 2020) at 25. Thus, the imposition of the supervision fees, placement fees, and collection costs—all discretionary LFOs—in Ortega's judgment and sentence appears to have been inadvertent. We remand for the court to strike these conditions from Ortega's judgment and

10

No. 54503-9-II

sentence. *See Bowman*, 198 Wn.2d at 629; *Peña Salvador*, 17 Wn. App. 2d at 791-92; *Dillon*, 12 Wn. App. 2d at 152.

### CONCLUSION

We hold that the sentencing court's recognition of the Department's authority to impose crime-related conditions of community custody is consistent with the Department's statutory authority and is not unconstitutionally vague. We remand for the sentencing court to strike the supervision fees, placement fees, and collection costs from Ortega's judgment and sentence, but we otherwise affirm.

Glasgow, A.C.J.

We concur:

Veljacic, J.

Price, J.

11