IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,

               Respondent,

    v.

GENZEN GABRIELLE REANO,

               Appellant.

No. 87495-1-I

DIVISION ONE

UNPUBLISHED OPINION

COBURN, J. — Genzen Reano appeals from the judgment and sentence entered upon his plea of guilty for indecent liberties with forcible compulsion. Reano asserts that various community custody conditions entered as part of his sentence are either unconstitutional or not statutorily authorized. The State concedes that two of the challenged conditions must be modified but contends that Reano has waived any challenge as to the remainder of the conditions. We affirm in part, reverse in part, and remand for the trial court to amend Reano's sentence in accordance with this opinion.

FACTS

On April 16, 2022, Reano attended a small social gathering at H.Z.S.'s apartment with H.Z.S., her roommate, and one other individual. H.Z.S. had known Reano for approximately one month, but only through the online application Snapchat.

While at the gathering, Reano quickly became intoxicated, and H.Z.S. told him to sleep on the couch. H.Z.S. left the apartment to assist a neighbor and when she

returned, she observed that Reano had relocated to her bed and fallen asleep. H.Z.S. went to the couch and fell asleep. She was awoken when Reano picked her off the couch but put her feet down and told Reano she could walk. H.Z.S. went to her bedroom and fell back asleep.

H.Z.S. was awoken a second time when Reano penetrated her vagina with his penis. H.Z.S. tried to fight Reano off, as Reano kept putting his hand over her mouth. H.Z.S.'s roommate and the fourth individual ran into the bedroom, grabbed Reano, and pulled him off H.Z.S.

The State initially charged Reano with one count of rape in the second degree. The State later amended the charge to one count of indecent liberties by forcible compulsion. Reano pleaded guilty to the amended charge. As part of the plea agreement, the parties agreed to recommend a sentence of 68 months confinement to be followed by lifetime community custody.

The trial court accepted the parties' recommendation and sentenced Reano to 68 months confinement to be followed by lifetime community custody. The court also imposed multiple conditions of community custody, including the following:

> 4. Do not engage in a romantic relationship without first disclosing your status as a sex offender and the nature of your crime(s). You must also disclose any romantic relationships to your CCO and your sexual deviancy treatment provider.
> …
> 6. You shall submit to polygraph and plethysmograph examinations, as directed and at your own expense.
> …
> 8. Do not associate with known felons outside of treatment/programming and sober support meetings.
> …
> 15. Pay the costs of crime-related counseling and medical treatment required by HZS, if ordered.
> …

19. You may not own/use/possess an internet capable device without first meeting with your CCO and fully and accurately completing the "Social Media and Electronic Device Monitoring Agreement" (DOC form 11-080). You must install an internet software monitoring program on all devices capable of accessing the internet, at your own expense and your CCO must be your designated accountability partner. The requirements and prohibition on this completed form will remain in effect until removed or modified in writing, signed, and dated by you and your CCO. (The purpose of this monitoring software is to ensure you are not having contact with any known victim, identified prohibited class of individuals (minors), or accessing sexually explicit materials as defined in condition #3.) Any approved device is subject to search.

…

22. You shall not visit, have accounts for, or utilize social media or websites that advertise or promote dating, prostitution, casual sex relationships, or similar content.

Reano did not object to any of the community custody conditions at the sentencing hearing.

Reano appeals.

DISCUSSION

Romantic Relationships

Reano argues that the term "romantic relationship" as used in community custody condition 4 is unconstitutionally vague in violation of the right to due process in the state and federal constitutions. The State concedes that "romantic relationship" is unconstitutionally vague and requests that this term be amended to "dating relationship." Our Supreme Court has previously held that the term "dating relationship" is not unconstitutionally vague. State v. Nguyen, 191 Wn.2d 671, 681, 425 P.3d 847 (2018). We accept the State's concession and remand for the trial court to amend community custody condition 4 to substitute the term "dating relationship" in place of "romantic relationship."

<u>Polygraph and Plethysmograph Examinations</u>

Reano argues that the trial court erred by requiring him to submit to plethysmograph examinations "as directed" in community custody condition 6, because plethysmograph examinations may only be ordered by a qualified provider for treatment purposes. The State concedes that community custody condition 6 should be modified to specify that plethysmograph examinations may only be required for treatment purposes. We accept the State's concession.

Reano also argues that the trial court erred when it directed him to undergo polygraph and plethysmograph examinations "at your own expense," because it found him indigent. The State argues that Reano waived this argument by failing to raise it during his sentencing hearing. We agree with Reano.

Generally, challenges to sentencing conditions that were not raised in the trial court may not be eligible for review. RAP 2.5(a); <u>State v. Casimiro</u>, 8 Wn. App. 2d 245, 249, 438 P.3d 137, <u>review denied</u>, 193 Wn.2d 1029, 445 P.3d 561 (2019). However, "appellate courts 'regularly exercise their discretion to reach the merits of unpreserved LFO [(legal financial obligation)] arguments' because LFOs can create a significant hardship for indigent defendants and severely hinder their reintegration into society." <u>State v. Ortega</u>, 21 Wn. App. 2d 488, 498, 506 P.3d 1287 (2022) (quoting <u>State v. Glover</u>, 4 Wn. App. 2d 690, 693, 423 P.3d 290 (2018)). Where the trial court indicates its intent to impose only mandatory LFOs, it is proper to order any non-mandatory LFOs stricken from the judgment and sentence. <u>State v. Bowman</u>, 198 Wn.2d 609, 629, 498 P.3d 478 (2021).

The trial court here found Reano indigent and stated that it intended to waive all

non-mandatory LFOs. In light of the trial court's clear statement of intent, we hold that the trial court erred in requiring Reano to bear the financial burden of polygraph and plethysmograph examinations. We remand to the trial court to amend community custody condition 6 to read as follows: "You shall submit to polygraph examinations as directed and plethysmograph examinations for treatment purposes as directed by a sexual deviancy treatment provider."

<u>Association With Known Felons</u>

Reano asserts that community custody condition 8, prohibiting him from associating with known felons outside of treatment, is unconstitutional as it is not crime-related and infringes on his right to association under the First Amendment to the United States Constitution. The State asserts that we should not consider this claim of error because Reano failed to raise it in the trial court and he does not demonstrate any manifest constitutional error warranting review. We agree with Reano.

Although challenges to sentencing conditions that were not raised in the trial court are generally not subject to review on appeal, we may consider newly raised claims of manifest constitutional error, provided that an adequate record exists to consider it. <u>State v. Peters</u>, 10 Wn. App. 2d 574, 581, 455 P.3d 141 (2019); RAP 2.5(a). It is manifestly unreasonable to impose an unconstitutional condition of community custody. <u>State v. Nguyen</u>, 191 Wn.2d 671, 678, 425 P.3d 847 (2018).

The First Amendment to the United States Constitution protects the right to associate with others. <u>State v. Moultrie</u>, 143 Wn. App. 387, 399, 177 P.3d 776 (2008). A convicted defendant's "First Amendment right 'may be restricted if reasonably necessary to accomplish the essential needs of the state and public order.'" <u>State v.

Bahl, 164 Wn.2d 739, 757, 193 P.3d 678 (2008) (internal quotation marks omitted) (quoting State v. Riley, 121 Wn.2d 22, 37-38, 846 P.2d 1365 (1993)). Community custody prohibitions implicating First Amendment rights "must be sensitively imposed[,] ... must be clear[,] and must be reasonably necessary to accomplish essential state needs and public order." Bahl, 164 Wn.2d at 757-58. "It is not reasonable" to order a defendant "not to have contact with a class of individuals who share no relationship to the offender's crime." State v. Riles, 135 Wn.2d 326, 350, 957 P.2d 655 (1998), overturned on other grounds by State v. Valencia, 169 Wn.2d 782, 239 P.3d 1059 (2010).

Here, there is nothing in the record that indicates what, if any, "essential needs of the state and public order" community custody condition 8 is intended to address. Additionally, there is no reasonable relationship between Reano's crime and the condition prohibiting him from associating with known felons, as no other individuals were involved in the commission of the offense. As such, community custody condition 8 does not pass constitutional muster.[1] We remand for the trial court to strike this condition from Reano's sentence.

---

[1] The State argues a court may limit a defendant's association with felons, so long as it specifies that the defendant has knowledge of the person's conviction. None of the cases the State relies upon support this argument. See State v. Riley, 121 Wn.2d 22, 37, 846 P.2d 1365 (1993) (upholding condition prohibiting defendant convicted of computer trespass from associating with other computer hackers); State v. Weatherwax, 193 Wn. App. 667, 680, 376 P.3d 1150 (2016), rev'd on other grounds, 188 Wn.2d 139, 392 P.3d 1054 (2017) (condition prohibiting defendant from associating with "known felons or gang members or their associates" was unconstitutionally vague); State v. Knott, No. 35546-2-lll, slip op. at 13-14 (Wash. Ct. App. Mar. 28, 2019 (unpublished) ("a condition may not restrict the defendant from contact with a felon regardless of whether the defendant knows the person holds a felony conviction"), https://www.courts.wa.gov/opinions/pdf/355462_unp.pdf, cited pursuant to GR 14.1(a).

<u>Counseling and Medical Treatment Required by H.Z.S.</u>

Reano asserts that the trial court erred by requiring him to pay for any "crime-related counseling and medical treatment required by HZS, if ordered." Reano contends that this condition impermissibly delegates the trial court's responsibility to determine the amount of restitution to the Department of Corrections. Reano's argument is not currently reviewable.

A preenforcement challenge to a community custody condition is ripe for review "'if the issues raised are primarily legal, do not require further factual development, and the challenged action is final.'" <u>State v. Cates</u>, 183 Wn.2d 531, 534, 354 P.3d 832 (2015) (quoting <u>State v. Sanchez Valencia</u>, 169 Wn.2d 782, 786-91, 239 P.3d 1059 (2010)). "Further factual development will be required if the condition would violate the constitution only if misapplied, but could be constitutionally applied depending on the circumstances of the enforcement." <u>Peters</u>, 10 Wn. App. 2d at 582. We will not consider a challenge that is not ripe for review. <u>Id.</u>

Community custody condition number 15 requires Reano to pay restitution for H.Z.S.'s counseling and medical treatment "if ordered." It is undisputed that Reano has not been ordered to pay any restitution to date. As such, this issue is not ripe for review and we decline to address it further at this time.

<u>Internet Monitoring Software</u>

Reano asserts that the trial court erred by requiring him to sign an internet monitoring agreement with the Department of Corrections and install internet monitoring software on all devices capable of accessing the internet. Reano contends that the condition unconstitutionally infringes upon his rights to free speech and privacy, and it is

unconstitutionally vague such that it allows for arbitrary and discriminatory enforcement. We disagree.

Our Supreme Court previously rejected these arguments in State v. Johnson, 197 Wn.2d 740, 487 P.3d 893 (2021). In that case, the trial court ordered that Johnson not access the internet, except as specifically authorized by the Department of Corrections through approved filters. Johnson, 197 Wn.2d at 745. Johnson argued that the condition was overbroad under the First Amendment, comparing it to the ban on social media use by sex offenders that was overturned by the United States Supreme Court in Packingham v. North Carolina, 582 U.S. 98, 137 S. Ct. 1730, 198 L. Ed. 2d 273 (2017). Our Supreme Court rejected this argument, noting that the condition did not prohibit Johnson from accessing any particular website. Johnson, 197 Wn.2d at 746. The court also noted that while it may be possible for the Department of Corrections to impose "an overzealous filter," that was a question of enforcement and not appropriate for review while Johnson was incarcerated. Id. at 747.

Johnson also argued that the condition "lacks sufficiently specific standards to prevent arbitrary enforcement by his future community custody officer." Id. at 748. The court similarly rejected this argument, noting that the condition should not be read in isolation but must be read in context with his judgment and sentence and related documents. Id. There, the statement of probable cause included a detailed recitation of how Johnson used the internet to perpetrate his offense. Id. at 749. From that description, the court concluded that an ordinary person could understand that Johnson was prohibited from using the internet to solicit commercial sex or sex with children, and that his community custody officer would use the internet filter with this purpose in mind.

8

Id.

Here, community custody condition 19 explicitly states the purpose for which the internet monitoring software will be used: "The purpose of this monitoring software is to ensure you are not having contact with any known victim, identified prohibited class or individuals (minors), or accessing sexually explicit materials as defined in condition #3."[2] This statement of purpose is clear about what internet activity is prohibited and what monitoring will be used for. Under Johnson, the community custody condition as written prevents arbitrary enforcement by the Department of Corrections. Accordingly, it is not unconstitutionally overbroad.

Reano nevertheless contends that In re Pers. Restraint of Canter, 35 Wn. App. 2d 798, 579 P.3d 1106 (2025), requires that the condition be stricken as unconstitutional. In Canter, the petitioner was released from prison and ordered by the Indeterminate Sentence Review Board to install internet monitoring software on his internet-capable devices. 35 Wn. App. 2d at 804. The software in question monitored Canter's internet-capable devices "in real time for 'trigger words'" and generated a weekly email sent to Canter's community corrections officer "containing his activities that were flagged and deemed 'questionable or highly questionable' based on the keywords." Id. at 804-05. Canter filed a personal restraint petition challenging the extent to which the software monitored his activity, asserting violations of the First and Fourth Amendments to the federal constitution. Id. at 812-13. This court agreed with Canter,

---

[2] Reano does not challenge the conditions prohibiting him from contacting the victim and accessing sexually explicit materials. Because the condition prohibiting Reano from associating with known felons is unconstitutional, there is no "prohibited class" of individuals with whom Reano may communicate and that phrase should no longer be read into the condition's purpose.

holding that the software's "constant acquisition and review of [Canter's] text messages and e-mails" violated his constitutional rights to free speech and against suspicionless searches. Id. at 826.

Reano's reliance on Canter is misplaced. Notably, the court in Canter did not hold that any and all internet monitoring runs afoul of the constitution, only that the method that the Department of Corrections used in Canter's case did so. Id. Here, Reano is not yet serving his term of community custody. We cannot predict what software the Department of Corrections will use to enforce Reano's community custody conditions, the capabilities of the chosen software, or how the Department of Corrections will set the software to function. Thus, enforcement of the condition is an issue not ripe for review at this time.

Reano also argues that the trial court erred by requiring that he obtain internet monitoring software "at your own expense." As explained above, the record indicates that the trial court intended to waive all non-mandatory LFOs, including the costs of community custody supervision.  We remand for the trial court to strike the words "at your own expense" from community custody condition 19.

Social Media Restrictions

Finally, Reano argues that the trial court erred by prohibiting him from accessing social media or websites that advertise or promote dating, prostitution, casual sex relationships, or similar content. Reano contends that community custody condition 22 is overbroad, as it is unrelated to his offense and effectively bars him from using all social media, in violation of the First Amendment to the federal constitution. We agree.

"Restrictions on Internet access have both due process and First Amendment

implications." Johnson, 197 Wn.2d at 744 (citing Packingham, 582 U.S. at 104). Although trial courts may restrict a defendant's access to the internet, any restrictions "must be narrowly tailored to the dangers posed by the specific defendant." Id. at 745 (citing Padilla, 190 Wn.2d at 678).

The community custody condition prohibiting Reano from using social media or websites that advertise or promote dating, prostitution, casual sex relationships, or similar content is not narrowly tailored to any danger posed by Reano. Although Reano became acquainted with the victim through Snapchat, there is nothing on the record showing that Snapchat advertises or promotes dating, prostitution, casual sex relationships, or similar content. More importantly, there is no indication that Reano used Snapchat for the purpose of committing his offense. Prohibiting Reano from using social media or websites that advertise or promote dating, prostitution, casual sex relationships, or similar content would be akin to prohibiting Reano from entering any and all restaurants because he happened to meet the victim in a restaurant. As it is not narrowly tailored to the facts of Reano's offense, community custody condition 22 is unconstitutional. We remand for the trial court to strike this condition from Reano's sentence.

CONCLUSION

We affirm in part and reverse in part, and remand to the trial court to amend

Reano's sentence in accordance with this opinion.

Cohen, J.

WE CONCUR:

Díaz, J.

Mann, J.